**BLEICHMAR FONTI & AULD LLP**
Lesley E. Weaver (Bar No. 191305)
555 12th Street, Suite 1600
Oakland, California 94607
Telephone: (415) 445-4003
Facsimile: (415) 445-4020

*Counsel for Co-Lead Plaintiff Martin Dugan*
*and Co-Lead Counsel for the Putative Class*

**POMERANTZ LLP**
Jennifer Pafiti (Bar No. 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
Facsimile: (212) 661-8665

*Counsel for Co-Lead Plaintiff Leon Yu*
*and Max Wisdom Technology Limited and*
*Co-Lead Counsel for the Putative Class*

*[Additional counsel on signature page]*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE TALIS BIOMEDICAL SECURITIES LITIGATION | Case No. 3:22-cv-00105-SI |
| | CLASS ACTION |
| THIS DOCUMENT RELATES TO: | **CO-LEAD PLAINTIFFS' PARTIAL OBJECTION TO DEFENDANTS' REQUEST FOR JUDICIAL NOTICE AND CONSIDERATION OF DOCUMENTS OTHER THAN THE AMENDED CONSOLIDATED COMPLAINT** |
| ALL ACTIONS | |
| | Date:        May 5, 2023 |
| | Time:        10:00 A.M. |
| | Courtroom:   1 |
| | Judge:       Hon. Susan Illston |

Co-Lead Plaintiffs Martin Dugan, Leon Yu, and Max Wisdom Technology Limited (together, "Plaintiffs") respectfully submit this partial objection to Defendants' Request for Judicial Notice and Consideration of Documents Incorporated by Reference in Support of Defendants' Motion to Dismiss Plaintiffs' Amended Consolidated Class Action Complaint (ECF 108) (the "Request"). Specifically, Plaintiffs object to Defendants' Request as to Exhibits 1, 3, 4, 6, and 7 for the reasons stated below.

## I.    INTRODUCTION

This Court has already cautioned against "'the overuse and improper application of judicial notice and the incorporation-by-reference doctrine' and advise[d] the parties to be judicious with regard to any future requests for judicial notice in connection with motions to dismiss." *In re Talis Biomedical Corp. Sec. Litig.*, 2022 WL 17551984, at *11 (N.D. Cal. Dec. 9, 2022) (quoting *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018)). Indeed, the Ninth Circuit has warned of "a concerning pattern in securities cases like this one: exploiting these procedures improperly to defeat what would otherwise constitute adequately stated claims at the pleading stage." *Khoja*, 899 F.3d at 988.

Defendants' Request falls within this pattern. They seek to introduce over 400 pages of extrinsic documents on their renewed motion to dismiss, including one the Court previously rejected (Exhibit 3 to the Eagan Declaration).[1] Defendants' Request is improper and should be denied in part:

- Exhibits 3 and 4 are not incorporated by reference, and Defendants improperly ask the Court to assume the truth of portions of Exhibits 3, 4, 6, and 7 only to dispute facts stated in the AC and to resolve competing theories against the AC; and

- Exhibits 1, 3, 4, 6, and 7 are not judicially noticeable because Defendants improperly use these documents to seek judicial notice of disputed facts for their truth.

In addition, Defendants' Exhibit 9, a purported "Summary of Statements Challenged Under Section 11 of the Securities Act of 1933," improperly seeks to argue the merits of Defendants' motion to dismiss.

---

[1] References to "Ex. __" or "Exhibit __" are to the exhibits to the Declaration of Shannon Eagan (ECF 107-1). Citations to "¶__" refer to the Amended Consolidated Class Action Complaint ("AC," ECF 104). Emphasis is added, and citations and internal quotation marks are omitted, unless otherwise noted.

## II.    ARGUMENT

### A.    Exhibits 3, 4, 6, and 7 Are Not Properly Incorporated by Reference

"[A] defendant may seek to incorporate a document into the complaint 'if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim.'" *Khoja*, 899 F.3d at 1002 (quoting *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003)).

However, "the unscrupulous use of extrinsic documents to resolve competing theories against the complaint risks premature dismissals of plausible claims that may turn out to be valid after discovery." *Khoja*, 899 F.3d at 998. Thus, "the doctrine is not a tool for defendants to short-circuit the resolution of a well-pleaded claim," and the "inferences a court may draw from an incorporated document should also be approached with caution." *Id.* at 1002-3. In particular, "it is improper to assume the truth of an incorporated document if such assumptions only serve to dispute facts stated in a well-pleaded complaint. This admonition is, of course, consistent with the prohibition against resolving factual disputes at the pleading stage." *Id.* at 1003. Thus, for example, it is "improper" to seek incorporation of SEC filings to show that executive compensation awards are "routine," since doing so "improperly ask[s] the district court to engage in fact-finding in the course of deciding the sufficiency of the [pleading]" and goes "beyond testing the sufficiency of the claims and into the realm of factual disputes." *Id.* at 1006.

Under this controlling law, incorporation by reference of Exhibits 3, 4, 6, and 7 is improper for two reasons. <u>First</u>, Exhibits 3 and 4 are not incorporated by reference because they are not referred to extensively in the AC and do not "form[] the basis of [Plaintiffs'] claim." *Khoja*, 899 F.3d at 1002. <u>Second</u>, Defendants improperly ask the Court "to engage in fact-finding" and assume the truth of portions of Exhibits 3, 4, 6, and 7 where "such assumptions only serve to dispute facts stated in [the] well-pleaded [AC]" and "resolve competing theories against the [AC]." *Id.* at 998, 1003, 1006.

***Exhibit 3*** is a transcript of a "Virtual Town Hall" event convened by the FDA. Exhibit 3 is not incorporated into the 65-page AC; three words were quoted once (¶178), which "is not sufficiently extensive under *Ritchie*." *Khoja*, 899 F.3d at 1003 (incorporation by reference of blog post quoted in "a few lines in a footnote of a 67-page complaint" was abuse of discretion). "For 'extensively' to mean anything under *Ritchie*, it should, ordinarily at least, mean more than once." *Id.* Nor does it

2

"form the basis for the complaint." *Khoja*, 899 F.3d at 1002.

Moreover, Defendants wrongly seek to incorporate Exhibit 3 "to dispute facts stated in [the] well-pleaded [AC]." *Khoja*, 899 F.3d at 1003. Citing Exhibit 3, Defendants assert that there was no quantitative FDA standard for "high sensitivity" comparator assays (MTD at 5:8-9, 27:7-8), but the AC alleges the opposite (¶¶166, 176-77). The Court must accept the well-pleaded facts as true and cannot "engage in fact-finding in the course of deciding the sufficiency of the" pleading. *Khoja*, 899 F.3d at 1006.

***Exhibit 4*** is a copy of the FDA SARS-CoV-2 Reference Panel Comparative Data as of December 7, 2020. Exhibit 4 is neither "extensively" referenced in nor the basis for the AC. *Khoja*, 899 F.3d at 1002. While Defendants claim Exhibit 4 "is cross-referenced" at ¶163, ¶163 quotes the FDA Molecular Diagnostic Template for Commercial Manufacturers from July 28, 2020 (Exhibit 2), which plainly did not cite Exhibit 4, from December 2020, over four months later. Similarly, Exhibit 4 is not incorporated by reason of a September 2020 article (cited at ¶174) that refers to "an earlier version of Exhibit 4" (Defs.' RJN at 5:22-23). A brief reference in a single footnote to "additional COVID-19 molecular diagnostic tests" authorized "after September 2020" and the 117 tests authorized "as of March 1, 2021" (¶175 n.23) also fails to incorporate Exhibit 4, from December 2020.

Moreover, Defendants again improperly ask the Court "to engage in fact-finding" and seek to use Exhibit 4 "to dispute facts stated in [the] well-pleaded [AC]." *Khoja*, 899 F.3d at 1003, 1006. Defendants assert that Exhibit 4 shows "the FDA still had not expressly required all 'high sensitivity' assays to have an LoD [limit of detection] better than 18,000 NDU/mL" and suggest that Talis's comparator assay (at 180,000 NDU/mL) was "high sensitivity" because "as of December 2020, one month before Talis submitted its EUA application, the FDA had granted EUAs to tests with product LoDs ranging from 180 NDU/ml to 600,000 NDU/mL." (MTD at 5:15-20; *see also* 27:10-11.) These purported inferences are improper because they are directly contrary to the AC, which alleges that (a) the FDA's "high sensitivity" standard was 18,000 NDU/mL and (b) "[t]he fact that a COVID-19 test is 'FDA authorized'" does not mean that it is "high sensitivity." ¶¶166, 174, 176-77.[2]

_____

[2] Defendants also claim it is "simply not true" that Talis used the "'least sensitive' FDA-authorized

3

*Exhibit 6* contains excerpts from a Registration Statement filed with the SEC by Lucira Health, Inc. ("Lucira"), a competitor to Talis. Defendants improperly ask the Court "to engage in fact-finding" and seek to use Exhibit 6 "to dispute facts stated in [the] well-pleaded [AC]." *Khoja*, 899 F.3d at 1003, 1006. Specifically, Defendants assert that Exhibit 6 "demonstrates" Talis's competitors did not have a "common understanding of the meaning of 'high sensitivity'" (Defs.' RJN at 6:3-4; *see also* MTD at 27:21-28:1), which flatly contradicts the AC's allegations that the FDA's standard was 18,000 NDU/mL and that "dozens of other manufacturers" (including Lucira) had "successfully followed" it to obtain EUAs by January 2021. ¶¶165, 176.

Finally, Defendants selectively submitted only a handful of pages from Lucira's Registration Statement to support a misleading assertion (addressed below), while omitting the page that refutes it. This "unscrupulous use of extrinsic documents," *Khoja*, 899 F.3d at 998, necessitates Plaintiffs' request, filed with Plaintiffs' opposition to the Motion to Dismiss, for judicial notice and/or incorporation of the omitted page.

*Exhibit 7* is Talis's Final Amended Registration Statement on Form S-1/A, filed with the SEC on February 11, 2021. Plaintiffs do not categorically object to the Court's consideration of Exhibit 7. However, "it is improper to assume the truth of an incorporated document if such assumptions only serve to dispute facts stated in a well-pleaded complaint." *Khoja*, 899 F.3d at 1003.

Here, Defendants seek to introduce Exhibit 7 for this "improper purpose" and again wrongly ask the Court "to engage in fact-finding." *Id.* at 1006. For example, Defendants assert that Exhibit 7 contains "undisputed statements" that "Talis entered into 'non-cancellable contractual obligations' for $33 million worth of 'instruments,' Ex. 7 at 108, secured a corresponding $33 million line of credit as collateral, *id.*, and expected those payments to be due in 'less than one year,' and 'to be incurred in 2021,'" which purportedly "dispel any notion that Talis had not 'ordered 5,000 instruments' from its manufacturer." (MTD at 17:25-18:1.) Defendants then declare it "simply implausible" that Talis

---

comparator assay" (Defs.' RJN at 5:23-24), but the AC accurately states that Talis's comparator assay was (a) the least sensitive as of "September 2020" (¶175), and (b) "among the least sensitive" test after September 2020, with "only two [FDA-authorized tests being] less sensitive than Talis's comparator assay" as of March 1, 2021 (¶175 n.23). Exhibit 4 is not to the contrary.

4

would take these purported steps "without actually ordering" the instruments.  (*Id.* at 18:26-19:2.)

This is improper.  Not only are Defendants incorrect on the merits (Opp. to MTD at 14-15), but they wrongly ask the Court to assume their statements' truth "to dispute facts stated in a well-pleaded complaint."  *Khoja*, 899 F.3d at 1003.  The AC specifically alleges that Talis did ***not*** order any instruments, but instead merely reserved future production capacity that was not being utilized because Talis One was only an early-stage, unreliable prototype.  ¶¶83-110.  Courts cannot "resolve competing theories against the complaint" or "engage in fact-finding," which goes "beyond testing the sufficiency of the claims and into the realm of factual disputes," and documents cannot be incorporated for this "improper purpose."  *Khoja*, 899 F.3d at 998, 1006.  As the Ninth Circuit cautioned in *Khoja*, "If defendants are permitted to present their own version of the facts at the pleading stage—and district courts accept those facts as uncontroverted and true—it becomes near impossible for even the most aggrieved plaintiff to demonstrate a sufficiently 'plausible' claim for relief."  *Id.* at 999.  Defendants cannot seek incorporation of Exhibit 7 to present their own version of the facts contrary to the AC.

### B.    Exhibits 1, 3, 4, 6, and 7 Are Not Judicially Noticeable

Rule 201 permits a court to notice an adjudicative fact if it is "not subject to reasonable dispute," meaning the fact is "generally known," or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).

However, "[i]t is improper to judicially notice a [document] when the substance of the [document] is subject to varying interpretations, and there is a reasonable dispute as to what [it] establishes."  *Khoja*, 899 F.3d at 1000.  Thus, "a court cannot take judicial notice of disputed facts contained in" public records, and "[j]ust because the document itself is susceptible to judicial notice does not mean that every assertion of fact within that document is judicially noticeable for its truth."  *Id.* at 999, 1003.  Even where a document is an accurate source, the "court must also consider—and identify—which fact or facts it is noticing from" the document.  *Id.* at 999.

Defendants previously acknowledged "the undisputed proposition that a court should not accept the truth of exhibits subject to judicial notice."  (ECF 93 at 4:21-22.)  Nonetheless, they now ask the Court to do just that:  take judicial notice of Exhibits 1, 3, 4, 6, and 7 for their truth, even though the purported "facts" that Defendants identify in these Exhibits are disputed and subject to

competing interpretations. This is improper, as Defendants' own authority confirms. Defendants quote *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010), as stating that courts may consider "what was in the public realm at the time," but omit the rest of the Ninth Circuit's holding: "Courts may take judicial notice of publications introduced to 'indicate what was in the public realm at the time, ***not whether the contents of those articles were in fact true***.'"

### (1)    Exhibits 1, 3, and 4: FDA Documents

The Court should decline to take judicial notice of Exhibits 1, 3, and 4 (and previously declined to take judicial notice of Exhibit 3). To the extent Defendants seek judicial notice of specific "facts" in these documents, such "facts" are irrelevant and disputed, and thus "subject to reasonable dispute," Fed. R. Evid. 201(b), making judicial notice improper.

***Exhibit 1*** is an unsigned (and since revoked) EUA for a Boston Medical Center ("BMC") COVID-19 test. But the BMC test was not Talis's comparator assay, is not referenced in the AC, and has nothing to do with this case. Exhibit 1 is wholly irrelevant and not subject to judicial notice. "It is difficult to understand how documents not referenced in a complaint and on which the allegations of the complaint do not necessarily rely can be relevant to the Court's determination." *Talis*, 2022 WL 17551984 at *11.

Further, Defendants ask the Court to draw a misleading factual inference that the FDA viewed a LoD of 600,000 NDU/mL as "high sensitivity" because the BMC test had a 600,000 NDU/mL LoD and received authorization from the FDA "in the same month it issued the July Template" (Defs.' RJN at 7 n.3; *see also* MTD at 5:20-21, 27:10-11). For two reasons, Defendants' proposed inference is irrelevant, disputed, and ignores the AC's allegations:

- <u>First</u>, it is irrelevant that the FDA authorized the BMC test. "The fact that a COVID-19 test is 'FDA authorized'" does not mean that it is "high sensitivity." ¶174.

- <u>Second</u>, the BMC test's 600,000 NDU/mL LoD is irrelevant to the FDA's definition of "high sensitivity."

  - The AC alleges that the FDA's "high sensitivity" standard was 18,000 NDU/mL or lower (¶166), and that Talis's comparator assay, at 180,000 NDU/mL, did not meet it (¶¶167, 177). By contrast, there is no indication that the BMC test was "high sensitivity" or that any company successfully used it as a comparator assay.

  - Further, the BMC test's EUA was granted on July 10, 2020—over two weeks

6

CO-LEAD PLAINTIFFS' PARTIAL OBJECTION TO DEFENDANTS' REQ. FOR JUDICIAL NOTICE
Case No. 3:22-cv-105-SI

*before* the FDA issued its "high sensitivity" standard on July 28, 2020. They are wholly unrelated.

Thus, Defendants' use of Exhibit 1 is disputed (and contrary to the AC), making judicial notice improper. *See Khoja*, 899 F.3d at 1001 (judicial notice was abuse of discretion where "district court could not reasonably conclude [document's impact] on a motion to dismiss").

Exhibit 3, the FDA "Virtual Town Hall" transcript, makes clear that the FDA urged companies to use the "best possible standard" for comparator assays, as alleged (¶178).

The Court previously declined to take judicial notice of Exhibit 3 at Plaintiffs' request in connection with Defendants' prior motion to dismiss. *See Talis*, 2022 WL 17551984 at *11 (denying Plaintiffs' request); ECF 90 and 88-2 (Plaintiffs' request). Nonetheless, Defendants now seek judicial notice of Exhibit 3 to dispute whether the FDA had a quantitative standard of an 18,000 NDU/mL LoD for "high sensitivity" tests (¶166). This is improper, as the language Defendants cite (*e.g.*, FDA Director Stenzel stating "we don't look in particular at LOD for a number of reasons") does not establish any "fact" that can be "accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). The FDA itself correlated LoD with sensitivity, stating that "a *lower LoD* represents a test's ability to detect a smaller amount of viral material in a given sample, *signaling a more sensitive test*." (Ex. 4 at 5.) And the FDA reported the results of its Reference Panel—which was created for the express purpose of "allow[ing] a *direct comparison* of analytical *sensitivity* performance across [molecular diagnostic] tests" (*id.* at 2)—as a list of tests ranked by their *LoD*.[3] (*Id.* at 6.) The tests were not ranked by any other metric. (*Id.*) Thus, at best, Defendants' effort to downplay LoD is merely a competing interpretation, "and there is a reasonable dispute as to what the [transcript] establishes," making judicial notice "improper." *Khoja*, 899 F.3d at 1000; *see also Talis*, 2022 WL 17551984 at *11 (rejecting judicial notice where parties sought "different and disputed inferences . . . that are inappropriate at this stage of the litigation").

Exhibit 4, the FDA Reference Panel Comparative Data, is not judicially noticeable for its truth for the same reason that it is not incorporated by reference. *Supra* at 3. Further, Defendants do not

---

[3] Specifically, the FDA provided a table of "*Sensitivity* Mean Estimates" of FDA-authorized tests that ranked the tests according to their LoD, with no other quantitative metric provided. (Ex. 4 at 6.)

CO-LEAD PLAINTIFFS' PARTIAL OBJECTION TO DEFENDANTS' REQ. FOR JUDICIAL NOTICE
Case No. 3:22-cv-105-SI

identify any specific "fact or facts" to be noticed.  *Khoja*, 899 F.3d at 999.

(2)    **Exhibit 6:  Lucira Health, Inc. Registration Statement**

*Exhibit 6*, excerpts from Lucira's Registration Statement, states (as the AC alleges) that "[a]ll of the FDA EUA authorized high sensitivity molecular assays have an LoD of 1,000 copies/mL VTM equivalent or lower," illustrating that Talis's competitors understood the term "high sensitivity"—and that Talis's comparator assay, at 180,000 NDU/mL, was low-sensitivity.  ¶¶176-77.  Defendants' request for judicial notice should be denied because the purported "facts" that Defendants identify are "subject to reasonable dispute," Fed. R. Evid. 201(b), and contradicted by the document itself.

First, Defendants wrongly suggest that sensitivity and LoD are unrelated, arguing that Exhibit 6 "states: 'High sensitivity shows a well matched comparator but *does not* reflect an assay's LoD.'" (MTD at 27:23-24 (emphasis in original).)  This quotation from a footnote in Exhibit 6 (at 122) is disputed and cannot be judicially noticed.  For one, it does not displace Lucira's clear statement (alleged in the AC) that "[a]ll of the FDA EUA authorized high sensitivity molecular assays have an LoD of 1,000 copies/mL VTM equivalent or lower."  (Ex. 6 at 4; ¶176.)  Moreover, Lucira's Registration Statement repeatedly makes clear that sensitivity and LoD are related, including by stating that: (i) "[t]ests with a *lower LoD* are *more sensitive*" (Ex. 6 at 4) and (ii) "[m]olecular assays tend to have *lower LoD, which equates to higher sensitivity* . . . ."  (Fonti Decl. Ex. 1 at 131).  At minimum, judicial notice is improper because the document "is subject to varying interpretations, and there is a reasonable dispute as to what [it] establishes."  *Khoja*, 899 F.3d at 1000.

Second, Defendants argue that there was "a *lack* of common understanding of 'high sensitivity'" because "Lucira conducted two clinical studies, one of which used a comparator assay with the *same* sensitivity as Talis's study [180,000 NDU/mL]."  (MTD at 27:24-28:1 (emphasis in original).)  This is disputed—and highly misleading—because Lucira *did not use* the 180,000 NDU/mL comparator assay to obtain its EUA.  Instead, page 130 of Lucira's Registration Statement makes clear that the study Lucira "submitted to support [its] FDA EUA for our COVID-19 test kit . . . utilized the Hologic Panther Fusion as a comparator assay . . . ."  (Fonti Decl. Ex. 1 at 130.)  The Hologic Panther Fusion is a *high-sensitivity* test, with a LoD of *600 NDU/mL* (*see* Ex. 4 at 7).  Notably, Defendants' Exhibit 6 carefully omits page 130, which states that Lucira "utilized the

8

Hologic Panther Fusion as a comparator assay" for its EUA submission, while including both adjacent pages (129 and 131). This "unscrupulous use of extrinsic documents," *Khoja*, 899 F.3d at 998, requires denial of Defendants' request for judicial notice of Exhibit 6. It also warrants the Court's judicial notice of the omitted page 130 (submitted with Plaintiffs' request for judicial notice).

### (3)    Exhibit 7: Talis Registration Statement

For the same reason that the truth of the disputed statements in Exhibit 7 (about Talis's purported "non-cancellable contractual obligations," purported $33 million line of credit, and purported payments due in "less than one year") cannot be assumed under the incorporation-by-reference doctrine, those statements are not subject to judicial notice as facts not "subject to reasonable dispute," Fed. R. Evid. 201(b). "Just because the document itself is susceptible to judicial notice does not mean that every assertion of fact within that document is judicially noticeable for its truth." *Khoja*, 899 F.3d at 999. Because the purported "facts" are disputed, "and there is a reasonable dispute as to what the [document] establishes," judicial notice of Exhibit 7 is "improper." *Id.* at 1000.

### C.    Defendants' Exhibit 9 Improperly Advances Argument

Finally, Exhibit 9 is a document created by Defendants' counsel that purports to be a "Summary of Statements Challenged Under Section 11 of the Securities Act of 1933." In doing so, however, Defendants add a "Summary of Arguments" as to each statement. This should be disregarded because it ignores Local Civil Rule 7-4(a), which requires "[a]rgument" to be made in Defendants' brief. To the extent Exhibit 9 does not include argument (as Defendants assert), it is redundant and unnecessary.

### III.    CONCLUSION

For the reasons stated above, Defendants' Request should be denied with respect to Exhibits 1, 3, 4, 6, and 7 to the Eagan Declaration.

CO-LEAD PLAINTIFFS' PARTIAL OBJECTION TO DEFENDANTS' REQ. FOR JUDICIAL NOTICE
Case No. 3:22-cv-105-SI

Dated: March 24, 2023                    Respectfully submitted,


By: */s/ Joseph A. Fonti*                By: */s/ Jonathan D. Park*
**BLEICHMAR FONTI & AULD LLP**           **POMERANTZ LLP**
Joseph A. Fonti (*pro hac vice*)         Jennifer Pafiti (Bar No. 282790)
jfonti@bfalaw.com                        1100 Glendon Avenue, 15th Floor
Evan A. Kubota (*pro hac vice*)          Los Angeles, California 90024
ekubota@bfalaw.com                       Telephone: (310) 405-7190
7 Times Square, 27th Floor               Facsimile: (212) 661-8665
New York, New York 10036                 jpafiti@pomlaw.com
Tel: (212) 789-1340
Fax: (212) 205-3960                      Jeremy A. Lieberman (*pro hac vice* application
                                         forthcoming)
       – and –                           J. Alexander Hood II (*pro hac vice*)
                                         James M. LoPiano (*pro hac vice*)
Lesley E. Weaver (Bar No. 191305)        Jonathan D. Park (*pro hac vice*)
lweaver@bfalaw.com                       600 Third Avenue, 20th Floor
Matthew S. Melamed (Bar No. 260272)      New York, New York 10016
mmelamed@bfalaw.com                      Telephone: (212) 661-1100
555 12th Street, Suite 1600              Facsimile: (212) 661-8665
Oakland, California 94607                jalieberman@pomlaw.com
Tel.: (415) 445-4003                     ahood@pomlaw.com
Fax: (415) 445-4020                      jlopiano@pomlaw.com
                                         jpark@pomlaw.com

*Counsel for Co-Lead Plaintiff Martin Dugan*
*and Co-Lead Counsel for the Putative Class*   *Counsel for Co-Lead Plaintiff Leon Yu*
                                               *and Max Wisdom Technology Limited and*
                                               *Co-Lead Counsel for the Putative Class*
**THE SCHALL LAW FIRM**
Brian Schall (Bar No. 290685)
2049 Century Park East, Suite 2460
Los Angeles, California 90067
Telephone: (424) 303-1964
brian@schallfirm.com

*Additional Counsel for Co-Lead Plaintiff*
*Martin Dugan*

10

**CERTIFICATION**

I, Joseph A. Fonti, am the ECF user whose identification and password are being used to file this **CO-LEAD PLAINTIFFS' PARTIAL OBJECTION TO DEFENDANTS' REQUEST FOR JUDICIAL NOTICE AND CONSIDERATION OF DOCUMENTS OTHER THAN THE AMENDED CONSOLIDATED COMPLAINT**.  In compliance with Civil Local Rule 5-1(i), I hereby attest that all other signatories listed and on whose belief this filing is submitted have authorized this filing and concur in its content.

*/s/ Joseph A. Fonti*
Joseph A. Fonti

11