COOLEY LLP
Patrick E. Gibbs (183174)
(pgibbs@cooley.com)
Shannon M. Eagan (212830)
(seagan@cooley.com)
Samantha A. Kirby (307917)
(skirby@cooley.com)
3175 Hanover Street
Palo Alto, California 94304-1130
Telephone: (650) 843-5000
Facsimile: (650) 849-7400

*Attorneys for Defendants Talis Biomedical Corporation,
Brian Coe, J. Roger Moody, Jr., Felix Baker, Raymond
Cheong, Melissa Gilliam, Rustem F. Ismagilov, Kimberly J.
Popovits, Matthew L. Posard, and Randal Scott*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE TALIS BIOMEDICAL SECURITIES LITIGATION | Case Number: 22-cv-00105-SI |
| | CLASS ACTION |
| THIS DOCUMENT RELATES TO: | **STIPULATED [PROPOSED] ORDER RE DISCOVERY OF ELECTRONICALLY STORED INFORMATION** |
| ALL ACTIONS | Judge:  Hon. Susan Illston<br>Courtroom:  1 |

IT IS HEREBY STIPULATED AND AGREED, by and among Co-Lead Plaintiffs Martin Dugan, Leon Yu, and Max Wisdom Technology Limited ("Plaintiffs"), and Talis Biomedical Corporation, Brian Coe, J. Roger Moody, Jr., Felix Baker, Raymond Cheong, Melissa Gilliam, Rustem F. Ismagilov, Kimberly J. Popovits, Matthew L. Posard, and Randal Scott (collectively "Defendants," and together with Plaintiffs, the "Parties"), by and through their undersigned counsel, that this order ("Order") will govern how the Parties manage electronic discovery in the above-captioned case as a supplement to the Federal Rules of Civil

1

Procedure, this Court's Guidelines for the Discovery of Electronically Stored Information, and any other applicable orders and rules.

## I.    COOPERATION

The parties are aware of the importance the Court places on cooperation, and commit to cooperate in good faith throughout the matter, including by agreeing to meet and confer regarding appropriate sources of discovery, time periods, search terms, and custodians, consistent with this Court's Guidelines for the Discovery of ESI.

## II.    LIAISON

The parties have identified liaisons to each other who are and will be knowledgeable about and responsible for discussing their respective ESI.  Each e-discovery liaison will be, or have access to those who are, knowledgeable about the technical aspects of e-discovery, including the location, nature, accessibility, format, collection, search methodologies, and production of ESI in this matter. The parties will rely on the liaisons, as needed, to confer about ESI and to help resolve disputes without court intervention.

## III.    PRESERVATION

Consistent with their obligations under Rule 26(f) of the Federal Rules of Civil Procedure, the Parties have discussed their preservation obligations and agree that preservation of potentially relevant ESI will be reasonable and proportionate. The Parties will disclose promptly upon becoming aware of them any categories or sources of relevant ESI in existence, but not preserved after the time a duty to do so arose.

## IV.    IDENTIFICATION OF RESPONSIVE DOCUMENTS

The Parties shall continue to meet and confer in an effort to conduct discovery in the most efficient and effective manner. Specifically, the Parties agree that in responding to requests for documents and information pursuant to Fed. R. Civ. P. 34, or earlier if appropriate, they will meet and confer about methods to search ESI in order to identify ESI that is subject to production in discovery and filter out ESI that is not subject to discovery. For the avoidance of any doubt, (i) the Parties acknowledge that a document may be non-responsive and not

produced even if it includes one of the search terms; and (ii) the Parties acknowledge that their obligations under the Federal Rules of Civil Procedure and under the relevant local rules and guidelines of this Court to make reasonable efforts to search for and produce relevant, non-privileged materials responsive to discovery requests is not strictly limited by the parameters of sources, time periods, search terms, and custodians agreed upon by the Parties, subject to proportionality considerations. If a Receiving Party, after considering the factors in Federal Rule of Civil Procedure 26(b), requests that the Producing Party produce email from additional custodians, apply additional or different search terms, or search a different time period, each Party agrees to consider any such requests in good faith.

## V.    PHASING

The Parties will confer about the phasing of production of ESI in response to discovery requests pursuant to Fed. R. Civ. P. 34, including prioritizing sources and custodians most likely to contain discoverable information.  In response to Plaintiffs' First Requests, Defendants agree to prioritize, to the extent practicable, the production of (1) documents sufficient to show whether, at the time of the IPO, Talis had "ordered 5,000 instruments" and any contracts with the instrument manufacturer; (2) "data and reports (e.g., manufacturing, supply chain, production rates)" that Talis provided to the National Institutes of Health pursuant to the RADx Contract; (3) Talis's communications with the FDA; (4) materials concerning the weekly business review meetings with Talis's CEO, CFO and COO referenced in the Amended Complaint (¶132), including any video or audio recordings; and (5) organizational charts for Talis.

## VI.    PRODUCTION OF ESI

### A.    FORMAT

The Parties will produce ESI in single-page, TIFF Group IV, 300 DPI TIFF black & white images with the exception of spreadsheets, audio files, and video files, which shall be produced in native format. If a Receiving Party believes that color is necessary to accurately review a produced document, the Receiving Party may request that specific documents be re-

produced in color, and the Producing Party shall consider reasonable requests for color re-production. The Parties are under no obligation to enhance an image beyond how it was kept in the usual course of business. The Parties will take reasonable steps to ensure that produced images show any and all text and images that would be visible to the reader using the native software that created the document.  If the image does not accurately reflect the document as it was kept in the usual course of business, including all comments, edits, tracking, etc., the Parties agree to meet and confer in good faith regarding a production format.

If a document is produced in native format, a single-page Bates stamped image slip sheet stating the document has been produced in native format should be provided. The Parties may use a Native File redaction tool (e.g. "Blackout") to redact Privileged Information from documents produced in Native Format, as long as the Receiving Party can easily identify the redactions.  When redaction of a spreadsheet is necessary in image format, a redacted full TIFF version may be produced if the spreadsheet is manually formatted for optimal printing. If the spreadsheet requiring redaction is not reasonably usable in TIFF format, the parties will meet-and-confer to determine a suitable production format.

Each native file should be named according to the Bates number it has been assigned and should be linked directly to its corresponding record in the load file using the "Native Link" field. If a Receiving Party prints or otherwise duplicates a document which was produced in native form, that Party agrees that the slip sheet will be printed or copied and will remain with the printed or copied native file in order to indicate any confidentiality designation of the document. To the extent that either Party believes that specific documents or classes of documents, not already identified within this protocol, should be produced in native format, the Parties agree to meet and confer in good faith. The Parties agree that data and documents produced need not be coded or identified by the document or discovery requests to which they are responsive.

B.    DEDUPLICATION

Each Party shall remove exact duplicate documents based on MD5 or SHA-1 hash

4

values, at the family level. Attachments should not be eliminated as duplicates for purposes of production, unless the parent email and all attachments are also exact duplicates. The Parties agree that an email that includes content in the "BCC" or other blind copy field shall not be treated as a duplicate of an email that does not include content in those fields, even if all remaining content in the email is identical.

### C.    METADATA

ESI shall be processed in a manner that preserves the source native file and relevant metadata without modification, including their existing time and date metadata. The Parties agree that Pacific Standard Time shall be the standardized time zone in which to process ESI.

All ESI will be produced with a delimited, database load file that contains the metadata fields, to the extent available, listed in **Table 1**, attached hereto. The metadata produced should have the correct encoding to enable preservation of the documents' original language.  The Parties will meet and confer as to any technical issues that may arise in the production of ESI.

For ESI other than email and e-documents that do not conform to the metadata listed in Table 1, including, but not limited to, text messages, phone logs, messaging apps, etc., the Parties will meet and confer as to the appropriate metadata fields to be produced.

### D.    EMBEDDED OBJECTS

Embedded files shall be produced as attachments to the document that contained the embedded file, with the parent/child relationship preserved. The Parties agree logos need not be extracted as separate documents.

### E.    ATTACHMENTS

The Parties agree that if any part of a parent document or its attachments is responsive, the entire document family will be produced, except any family member that must be withheld or redacted on the basis of privilege or to the extent the document contains personal health information ("PHI") or personal identifiable information ("PII"). The Parties agree to use best efforts to ensure that any redacting of PHI or PII will not interfere with the Receiving Party's ability to review and understand the contents of any such redacted documents. If a family

5

member is withheld on the basis of privilege, a slip sheet stating it has been withheld will be produced. The attachments will be produced sequentially after the parent email.

The Parties retain the right to meet and confer regarding reasonable requests to produce or identify specific documents referenced by links to shared drives or cloud storage. The Producing Party agrees to consider such reasonable requests to produce those specific documents, if responsive, to the extent possible.

**F.      COMPRESSED FILE TYPES**

Compressed file types (i.e. .zip) should be decompressed so that the lowest level document or file is extracted.

**G.      STRUCTURED DATA**

To the extent a response to discovery requires the production of electronic information stored in a database, the Parties will meet and confer regarding appropriate methods of production.

**H.      ENCRYPTION**

The Producing Party will take reasonable steps, prior to production, to unencrypt any discoverable ESI that exists in encrypted or password-protected format.

**I.      EXTRACTED TEXT**

ESI shall be processed and produced, to the extent practicable, in a manner that preserves and displays hidden columns or rows, hidden text, notes, or worksheets, speaker notes, tracked changes, redlines, and comments.

**J.      PRODUCTION DELIVERY**

The Parties will deliver each production via an FTP site, unless impractical. To maximize the security of information in transit, any media on which documents are produced must be password protected.  The Producing Party shall transmit the password to the Receiving Party, under separate cover, contemporaneously with sending the encrypted media.

**K.      REDACTIONS**

No responsive, non-privileged document shall be withheld or redacted on any basis

other than a claim of privilege or because the document contains PHI or PII. The Parties will meet and confer about whether there is an appropriate basis for redacting or withholding a responsive, non-privileged document for any other reasons before any such document is produced with redactions or withheld from production.

**L.      PRIVILEGE LOGS**

The Parties agree to exchange privilege logs that comply with Rule 26(b)(5) of the Federal Rules of Civil Procedure. The Parties will substantially complete the production of privilege logs no later than 30 days following substantial completion of all document productions. Privilege logs will be provided in a searchable and sortable spreadsheet format. Certain privileged communications or documents need not be included in a privilege log unless otherwise agreed between the Parties or ordered by the Court: (a) communications between a Party and its outside legal counsel after the commencement of, and related to, this action; and (b) any communications regarding litigation holds or preservation, collection, or review of discoverable information in this action. Documents that have been redacted for privilege should be identified as such on the privilege log.

In an effort to avoid unnecessary expense and burden, the Parties agree that, for documents withheld from production or redacted on the basis of attorney-client privilege, work product doctrine and/or any other applicable privilege, the Producing Party will prepare a log containing, for each document (except those exempted above): (a) the privilege(s) claimed; (b) a description of the general subject matter contained in the document and the type of document (e.g., letter, memorandum, handwritten notes, etc.) sufficient to allow the Receiving Party to assess the claimed privilege; (c) the date of the document; (d) the name and/or email address or other data identifying the author(s)/addresser, including specifically identifying any person who is an attorney or an employee of any legal department as such; and (e) the name and/or email address or other data identifying the addressee(s) and all recipients of the document, including specifically identifying any person who is an attorney or an employee of any legal department and their title.

If the Receiving Party contests a privilege claim, the Receiving Party must notify the Producing Party in writing. Pursuant to Civil Local Rule 37-1, the Parties must attempt to confer in good faith to resolve any challenge.  Thereafter, the Parties shall seek judicial intervention if the challenge cannot be resolved.

**IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.**

DATED:        June 12, 2023

Respectfully submitted,

By: */s/ Evan A. Kubota*
**BLEICHMAR FONTI & AULD LLP**
Joseph A. Fonti (*pro hac vice*)
jfonti@bfalaw.com
Evan A. Kubota (*pro hac vice*)
ekubota@bfalaw.com
7 Times Square, 27th Floor
New York, New York 10036
Tel: (212) 789-1340
Fax: (212) 205-3960

         – and –

Lesley E. Weaver (Bar No. 191305)
lweaver@bfalaw.com
Matthew S. Melamed (Bar No. 260272)
mmelamed@bfalaw.com
1330 Broadway, Suite 630
Oakland, California 94612
Tel.: (415) 445-4003
Fax: (415) 445-4020

*Counsel for Co-Lead Plaintiff Martin Dugan
and Co-Lead Counsel for the Putative Class*

**POMERANTZ LLP**
Jennifer Pafiti (Bar No. 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
Facsimile: (212) 661-8665
jpafiti@pomlaw.com

Jeremy A. Lieberman (*pro hac vice*
application forthcoming)
J. Alexander Hood II (*pro hac vice*)
James M. LoPiano (*pro hac vice*)
Jonathan D. Park (*pro hac vice*)

By: */s/ Patrick E. Gibbs*
**COOLEY LLP**
Patrick E. Gibbs (Bar No. 183174)
Shannon M. Eagan (Bar No. 212830)
Samantha A. Kirby (Bar No. 307917)
3175 Hanover Street
Palo Alto, California 94304
Telephone: (650) 843-5000
Facsimile: (650) 849-7400
pgibbs@cooley.com
seagan@cooley.com
skirby@cooley.com

*Attorneys for Defendants Talis Biomedical
Corporation, Brian Coe, J. Roger Moody, Jr.,
Felix Baker, Raymond Cheong, Melissa Gilliam,
Rustem F. Ismagilov, Kimberly J. Popovits,
Matthew L. Posard, and Randal Scott*

9

600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
jalieberman@pomlaw.com
ahood@pomlaw.com
jlopiano@pomlaw.com
jpark@pomlaw.com

*Counsel for Co-Lead Plaintiff Leon Yu
and Max Wisdom Technology Limited and
Co-Lead Counsel for the Putative Class*

**THE SCHALL LAW FIRM**
Brian Schall (Bar No. 290685)
2049 Century Park East, Suite 2460
Los Angeles, California 90067
Telephone: (424) 303-1964
brian@schallfirm.com

*Additional Counsel for Co-Lead Plaintiff
Martin Dugan*

**PURSUANT TO STIPULATION, IT IS SO ORDERED.**

Dated: June 13, 2023

The Honorable Susan Illston

United States District Judge

**TABLE 1: Metadata Fields**

1.  **BegBates** -- Beginning Bates number.

2.  **EndBates** -- Ending Bates number.

3.  **BegAttach** -- Bates number of the first page of a Family range.

4.  **EndAttach** -- Bates number of the last page of a Family range.

5.  **ParentID** – Parent Bates number, populated only for child records.

6.  **PageCount** -- Number of pages in a document.

7.  **FileExtension** -- Original file extension as the document was maintained in the ordinary course.

8.  **FileSize** -- File size in bytes.

9.  **DocTitle** -- document title as stored in file metadata or a cloud repository.

10. **DocSubject** -- Any value populated in the Subject field of the document properties.

11. **Custodian** – Primary custodian full name.

12. **AllCustodians –** All custodians from whom a copy of a document was collected.

13. **Author** -- document author information for non-email.

14. **LastSavedBy** – User who last saved a file.

15. **Company** – File company information.

16. **Email From**

17. **Email To**

18. **Email CC**

19. **Email BCC**

20. **Email Subject**

21. **IntMsgID**

22. **Attachments** -- Name of attached file(s) as maintained in the ordinary course of business.

23. **DateCreated** -- File date and time created as extracted from the Native File.

11

24. **DateModified** -- File date and time modified as extracted from the Native File.

25. **DateLastSaved** – File date and time last saved as extracted from the Native File.

26. **DateSent** -- Email date and time sent.

27. **DateReceived** -- Email date and time received.

28. **FileName** -- Name of the file as maintained in the ordinary course of business with extension.

29. **Hash** -- The hash value generated at processing.

30. **TextPath** -- The path to the text file for each record in the production volume, including filename.

31. **NativePath** -- The path to the Native Format file on the delivery media.