# EXHIBIT 12

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA


IN RE TALIS BIOMEDICAL

SECURITIES LITIGATION

                                    Case No.

THIS DOCUMENT RELATES TO:      22-cv-00105-SI

ALL ACTIONS

_____



VIDEOTAPED DEPOSITION OF ZACHARY NYE, Ph.D.

Palo Alto, California

Friday, December 8, 2023

Volume 1




STENOGRAPHICALLY REPORTED BY:

REBECCA L. ROMANO, RPR, CSR, CCR

California CSR No. 12546

Nevada CCR No. 827

Oregon CSR No. 20-0466

Washington CCR No. 3491

JOB NO. 6324976


PAGES 1 - 55

Page 1

                    ZACHARY NYE, Ph.D.,                    10:04:19

having been administered an oath, was examined and

testified as follows:

                    EXAMINATION

BY MR. GIBBS:                                              10:04:19

    Q.   Good morning.

    A.   Good morning.

    Q.   My name, as I said, is Patrick Gibbs.  I

represent the defendants in this case.

         Would you please state your full name for    10:04:26

the record?

    A.   Sure.  My name is Zachary Nye.

Z-A-C-H-A-R-Y.  Last name is spelled N-Y-E.

    Q.   Do you have a preference for how I refer

to you today?  Shall I refer to you as Dr. Nye?       10:04:41

    A.   That's what people typically do in these

settings, but it's fine either way.

    Q.   Okay.  You've been deposed before?

    A.   Yes, sir.

    Q.   Approximately how many times?              10:04:51

    A.   I think over 60 times.

    Q.   Okay.  I suspect you're familiar with the

rules.

    A.   I think -- I think I am, yes.

    Q.   Okay.  You understand, though, that        10:05:00

                                                    Page 9

calculating damages would be given a set of shares    10:50:16

that have already been determined to have been

purchased pursuant to or traceable to the

registration offering, and then you apply the

formulas you've described here in your report; is    10:50:27

that fair?

     A.   I think -- I think so.

     Q.   Okay.  And slightly different but related

question:

          Have you been asked to offer any opinions    10:50:38

about whether and under what circumstances a given

share can be deemed to have been purchased pursuant

to or traceable to the registration statement?

     A.   No, I have not.

     Q.   Do you have a view, opinion, or    10:50:53

understanding as to how one might go about

determining whether a given share of stock was

purchased pursuant to or traceable to the

registration statement?

     A.   No, I do not.    10:51:06

     Q.   Okay.

          MR. GIBBS:  We're a little under an hour,

but I'm about to switch topics, so that's a

convenient time for a short break if everybody's

okay with that?    10:51:23

Page 46

MR. KUBOTA:  Sounds good.    10:51:25

THE DEPONENT:  That's fine.

THE VIDEOGRAPHER:  We are going off the record.  The time is 10:50 a.m.

(Recess taken.)    10:51:30

THE VIDEOGRAPHER:  All right.  We're back on the record.  The time is 11:05 a.m.

Q.  (By Mr. Gibbs)  All right.  Welcome back.

A.  Thank you.

Q.  Before the break, I was asking you about    11:05:46
the class definition in this case and its reference
to Talis common stock acquired pursuant to or
traceable to the registration statement, and I just
have a few follow-up questions on that general
topic, if that's okay?    11:06:03

A.  Sure.

Q.  So first of all, just to be clear, as I
understand it, you are not offering any opinion in
this case at this time as to whether and how one
might determine that a given share of Talis common    11:06:15
stock was purchased pursuant to or traceable to the
registration statement; is that correct?

A.  Correct.

Q.  Okay.  Setting your opinion right now
aside, I want to get a sense of whether you've done    11:06:28

Page 47

speculating that it has something to do with                11:07:35

whether you bought it directly in the offering

versus in the secondary market between the two

concepts, maybe.

Q.   (By Mr. Gibbs)   Okay.   And --                        11:07:45

MR. GIBBS:   Evan, I have a very small

number of questions -- I suspect you're going to

assert the same objections to them.   You're free to

do that, or we can just agree that you're objecting

to the whole line and we're not going to claim you     11:07:57

waived any objections.

MR. KUBOTA:   That's fine.

MR. GIBBS:   I just want to --

MR. KUBOTA:   That's fine.

MR. GIBBS:   Okay.                                     11:08:05

Q.   (By Mr. Gibbs)   Have you personally ever

done any work to figure out whether and when one

can trace the acquisition of a share to a

registration statement in any case?

A.   No.                                               11:08:20

Q.   Are you familiar with the concept of a

lockup period in connection with an IPO?

A.   Yes.

Q.   What's your general understanding of

that?                                                  11:08:30

Page 49

A.   That there's a -- a period of time in which there are restrictions to a person who's subject to said lockup period with respect to selling their shares.

Q.   And do you have an understanding as to whether in a typical IPO shares that are subject to a lockup are registered or not registered in the registration statement?

A.   Generally -- I don't have a general opinion on that or opinion whether that's generally true or false.  I -- I would imagine it kind of varies, but I don't know for sure.

Q.   Okay.  And so is it fair to conclude that in your professional capacity, you've never engaged to any effort to figure out whether it's possible to trace a share of common stock to a registration statement when the share was purchased after the expiration of a lockup?

MR. KUBOTA:  Objection.  Asked and answered.

THE DEPONENT:  I've -- I've never -- if -- like traced down the line shares that are purchased after a lockup period.  I've never been asked to do that exercise, so I don't have any experience doing that.

Page 50

Q.   (By Mr. Gibbs)  Okay.  Are you at all     11:09:49
familiar with the trades in Talis common stock
engaged in by the -- the named plaintiff in this
case Martin Dugan?

A.   Sorry.  Am I familiar with that person's     11:10:09
trades?

Q.   Correct.

A.   I am not.

Q.   So you've not spent any time studying his
trades?     11:10:16

A.   None.

Q.   So you've done no work trying to figure
out whether the shares of Talis common stock that
Mr. Dugan purchased at any point in time were
purchased pursuant to or traceable to the Talis     11:10:27
registration statement; is that fair?

A.   That's fair.

Q.   Okay.

MR. GIBBS:  I don't have any other
questions so I appreciate your time and your     11:10:41
patients.  Unless your counsel has any questions,
then we'll call it a day.

MR. KUBOTA:  No questions at this time.

THE DEPONENT:  Thanks for your time.
Appreciate it.  Good to see you all.     11:10:53

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

I, Rebecca L. Romano, a Registered Professional Reporter, Certified Shorthand Reporter, Certified Court Reporter, do hereby certify:

That the foregoing proceedings were taken before me remotely at the time and place herein set forth; that any deponents in the foregoing proceedings, prior to testifying, were administered an oath; that a record of the proceedings was made by me using machine shorthand which was thereafter transcribed under my direction; that the foregoing transcript is true record of the testimony given.

Further, that if the foregoing pertains to the original transcript of a deposition in a Federal Case, before completion of the proceedings, review of the transcript [ ] was [X] was not requested.

I further certify I am neither financially interested in the action nor a relative or employee of any attorney or any party to this action.

IN WITNESS WHEREOF, I have this date subscribed my name.

Dated:   December 11, 2023

Rebecca L. Romano, RPR, CCR

CSR. No 12546

Page 53