**BLEICHMAR FONTI & AULD LLP**
Lesley E. Weaver (Bar No. 191305)
1330 Broadway, Suite 630
Oakland, California 94612
Telephone: (415) 445-4003
Facsimile: (415) 445-4020

*Counsel for Lead Plaintiff Martin Dugan*
*and Lead Counsel for the Putative Class*

*[Additional counsel on signature page]*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE TALIS BIOMEDICAL SECURITIES LITIGATION | Case No. 3:22-cv-00105-SI |
| | CLASS ACTION |
| THIS DOCUMENT RELATES TO: | **LEAD PLAINTIFF'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF MOTION FOR CLASS CERTIFICATION** |
| ALL ACTIONS | |

Date:        February 9, 2024
Time:        10:00 A.M.
Courtroom:   1
Judge:       Hon. Susan Illston

---

LEAD PLAINTIFF'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF MOTION FOR CLASS CERTIFICATION (Case No. 3:22-cv-00105-SI)

## **TABLE OF CONTENTS**

I.      PRELIMINARY STATEMENT ................................................................................................. 1

II.     STATEMENT OF FACTS ...................................................................................................... 3

III.    ARGUMENT ......................................................................................................................... 3

      A.      Lead Plaintiff Dugan Is Adequate.................................................................................. 3

            1.      Mr. Dugan Readily Surpasses the Threshold of Knowledge ............................ 4

            2.      Defendants' Attacks on Mr. Dugan's "Candor" Are Meritless ........................ 6

            3.      Defendants Cannot Fabricate a "Conflict" Based on Mr. Dugan's Typical "Investment Motivation" and Purchase History ............................... 7

      B.      Mr. Dugan Is Typical ................................................................................................... 10

      C.      A Narrow "Actual Knowledge" Defense to One of Nine Misstatements and Omissions Cannot Defeat Predominance or Superiority ............................................ 10

      D.      Defendants Cannot Use "Tracing" to Shorten the Class Period ................................ 12

            1.      Defendants' "Tracing" Argument Is Unnecessary to Address Now ............. 12

            2.      Rule 37(c)(1) Bars Defendants' "Tracing" Argument ................................... 13

            3.      "Tracing" Will Be Addressed with a Class-Wide Methodology ................... 14

IV.    CONCLUSION..................................................................................................................... 15

LEAD PLAINTIFF'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF MOTION FOR CLASS CERTIFICATION (Case No. 3:22-cv-00105-SI)

# TABLE OF AUTHORITIES

**CASES**

*Abbey v. Computer Memories, Inc.*,
634 F. Supp. 870 (N.D. Cal. 1986) ........................................................................................ 15

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
568 U.S. 455 (2013) .................................................................................................... 2, 8, 13

*Blackie v. Barrack*,
524 F.2d 891 (9th Cir. 1975) ................................................................................................. 8

*Bos. Ret. Sys. v. Uber Techs., Inc.*,
2022 WL 2954937 (N.D. Cal. July 26, 2022) .................................................................. 4, 11

*Brown v. Wal-Mart Store, Inc.*,
2018 WL 2011935 (N.D. Cal. Apr. 27, 2018) ...................................................................... 13

*Brown v. Wal-Mart Stores, Inc.*,
651 F. App'x 672 (9th Cir. 2016) ........................................................................................ 14

*Crossen v. CV Therapeutics*,
2005 WL 1910928 (N.D. Cal. Aug. 10, 2005) ....................................................................... 6

*Darvin v. Int'l Harvester Co.*,
610 F. Supp. 255 (S.D.N.Y. 1985) ........................................................................................ 6

*Day v. GEICO Cas. Co.*,
2022 WL 16556802 (N.D. Cal. Oct. 31, 2022) ................................................................... 14

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ............................................................................................. 10

*Hildes v. Arthur Andersen LLP*,
734 F.3d 854 (9th Cir. 2013) ............................................................................................. 2, 8

*In re Connetics Corp. Sec. Litig.*,
257 F.R.D. 572 (N.D. Cal. 2009) .......................................................................................... 9

*In re Conseco Life Ins. Co. LifeTrend Ins. Sales & Mktg. Litig.*,
270 F.R.D. 521 (N.D. Cal. 2010) .......................................................................................... 5

*In re Countrywide Fin. Corp. Sec. Litig.*,
273 F.R.D. 586 (C.D. Cal. 2009) ..................................................................................... 2, 10

*In re Diasonics Sec. Litig.*,
599 F. Supp. 447 (N.D. Cal. 1984) ....................................................................................... 1

LEAD PLAINTIFF'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF MOTION FOR CLASS CERTIFICATION (Case No. 3:22-cv-00105-SI)

*In re Eagle Computer Sec. Litig.*,
   1986 WL 12574 (N.D. Cal. Mar. 31, 1986).................................................................................. 13

*In re Honest Co. Sec. Litig.*,
   2023 WL 3190506 (C.D. Cal. May 1, 2023) ................................................................................. 15

*In re IndyMac Mortg.-Backed Sec. Litig.*,
   286 F.R.D. 226 (S.D.N.Y. 2012) ........................................................................................... 11, 12

*In re Initial Pub. Offerings Sec. Litig.*,
   471 F.3d 24 (2d Cir. 2006)....................................................................................................... 11

*In re Kosmos Energy Ltd. Sec. Litig.*,
   299 F.R.D. 133 (N.D. Tex. 2014) ........................................................................................... 6, 11

*In re LendingClub Sec. Litig.*,
   282 F. Supp. 3d 1171 (N.D. Cal. 2017) ....................................................................................... 5

*In re Lyft Inc. Sec. Litig.*,
   2021 WL 3711470 (N.D. Cal. Aug. 20, 2021) ........................................................................ 11, 12

*In re Montage Technology Grp. Ltd. Sec. Litig.*,
   2016 WL 1598666 (N.D. Cal. Apr. 21, 2016) ........................................................................... 4, 9

*In re Quarterdeck Off. Sys., Inc. Sec. Litig.*,
   1993 WL 623310 (C.D. Cal. Sept. 30, 1993) ................................................................................. 6

*In re Safeguard Scis.*,
   216 F.R.D. 577 (E.D. Pa. 2003)............................................................................................... 8, 9

*In re Silver Wheaton Corp. Sec. Litig.*,
   2017 WL 2039171 (C.D. Cal. May 11, 2017) ............................................................................... 6

*In re Smart Techs., Inc. S'holder Litig.*,
   295 F.R.D. 50 (S.D.N.Y. 2013) ................................................................................................ 13

*In re Snap Inc. Sec. Litig.*,
   334 F.R.D. 209 (C.D. Cal. 2019) ...................................................................................... 5, 6, 13

*In re Solar City Corp. Sec. Litig.*,
   2017 WL 363274 (N.D. Cal. Jan. 25, 2017) ................................................................................. 7

*In re Twitter Inc. Sec. Litig.*,
   326 F.R.D. 619 (N.D. Cal. 2018)............................................................................................... 1, 4

*In re Valence Tech. Sec. Litig.*,
   1996 WL 119468 (N.D. Cal. Mar. 14, 1996)................................................................................. 9

*In re Worlds of Wonder Sec. Litig.*,
   1990 WL 61951 (N.D. Cal. Mar. 23, 1990)................................................................................. 13

iii

*Kaplan v. Rose*,
   49 F.3d 1363 (9th Cir. 1994) ......................................................................................... 10

*Kline v. Wolf*,
   702 F.2d 400 (2d Cir. 1983)............................................................................................ 7

*Koenig v. Benson*,
   117 F.R.D. 330 (E.D.N.Y. 1987) ............................................................................. 6, 8, 9

*Loc. Joint Exec. Bd. of Culinary/Bartender Tr. Fund v. Las Vegas Sands, Inc.*,
   244 F.3d 1152 (9th Cir. 2001) ........................................................................................ 3

*McPhail v. First Command Fin. Plan., Inc.*,
   247 F.R.D. 598 (S.D. Cal. 2007) .................................................................................... 6

*N.J. Carpenters Health Fund v. Residential Cap., LLC*,
   272 F.R.D. 160 (S.D.N.Y. 2011) .................................................................................. 11

*N.J. Carpenters Health Fund v. Residential Cap., LLC*,
   2012 WL 4865174 (S.D.N.Y. Oct. 15, 2012).............................................................. 11

*N.J. Carpenters Health Fund v. Residential Cap., LLC*,
   288 F.R.D. 290 (S.D.N.Y. 2013) ................................................................................. 11

*Palana v. Mission Bay Inc.*,
   2015 WL 4110432 (N.D. Cal. July 7, 2015)............................................................. 1, 6

*Perrin v. Sw. Water Co.*,
   2014 WL 10979865 (C.D. Cal. July 2, 2014).............................................................. 15

*Prause v. TechnipFMC, PLC*,
   2020 WL 3549686 (S.D. Tex. Mar. 9, 2020)................................................................. 6

*Pruitt v. Pers. Staffing Grp., LLC*,
   2020 WL 3050330 (N.D. Ill. June 8, 2020) ................................................................... 6

*Savino v. Computer Credit, Inc.*,
   164 F.3d 81 (2d Cir. 1998)............................................................................................. 7

*Searcy v. eFunds Corp.*,
   2010 WL 1337684 (N.D. Ill. Mar. 31, 2010)................................................................. 7

*SEB Inv. Mgmt. AB v. Symantec Corp.*,
   335 F.R.D. 276 (N.D. Cal. 2020).................................................................................. 10

*SEC v. Platforms Wireless Int'l Corp.*,
   617 F.3d 1072 (9th Cir. 2010) ....................................................................................... 8

*Sudunagunta v. NantKwest, Inc.*,
   2018 WL 3917865 (C.D. Cal. Aug. 13, 2018)........................................................ 12, 13

iv

*Sundaram v. Freshworks, Inc.*,
   2023 WL 1819158 (N.D. Cal. Feb. 8, 2023) ................................................................................ 15

*Trim v. Mayvenn, Inc.*,
   2022 WL 17584237 (N.D. Cal. Dec. 12, 2022) ............................................................................. 7

*Vignola v. Fat Brands, Inc.*,
   2020 WL 1934976 (C.D. Cal. Mar. 13, 2020) ............................................................................. 11

*Weisman v. Darneille*,
   78 F.R.D. 669 (S.D.N.Y. 1978) ...................................................................................................... 6

*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*,
   259 F.3d 1101 (9th Cir. 2001) ............................................................................................... 13, 14

**STATUTES**

15 U.S.C. § 77z ............................................................................................................................... 9

**RULES**

Fed. R. Civ. P. 23 ............................................................................................................................ 1

Fed. R. Civ. P. 26 .......................................................................................................................... 13

Fed. R. Civ. P. 37 .............................................................................................................. 3, 12, 13, 14

LEAD PLAINTIFF'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF MOTION FOR CLASS CERTIFICATION (Case No. 3:22-cv-00105-SI)

## I.    PRELIMINARY STATEMENT

This Section 11 action is eminently suited for class treatment.  Rule 23(a) is satisfied:  Lead Plaintiff Martin Dugan has supervised Class Counsel, produced discovery, and testified that he is "a ***fiduciary for the class***" and seeks to recover for "many other people that are in the same boat as me that lost significant money by being misled" by Defendants, and "it's simply just wrong."  (Tr. at 41:15-23; 294:16-22; 269:12-21.)  Further, there is no dispute that falsity, materiality, and damages are subject to Class-wide proof, and a class action is superior to thousands of individual trials.[1]

Nonetheless, Defendants oppose class certification based on arguments that the Supreme Court, Ninth Circuit, and courts in this District have long rejected.  Their arguments fail.

**<u>Defendants' Adequacy and Typicality Arguments Fail</u>:**  Defendants made false and misleading statements and omissions to raise over $250 million from the Class.  To distract from their own misconduct, Defendants seek to vilify Mr. Dugan.  In doing so, their goal is not to ensure an adequate class representative, but simply to avoid any liability to the Class.  Crediting Defendants' self-serving arguments would be "like permitting a fox . . . to take charge of the chicken house."  *In re Diasonics Sec. Litig.*, 599 F. Supp. 447, 451 (N.D. Cal. 1984).  In all events, Defendants' specious attacks—which do not cite a ***single*** case from this District—fail as a matter of fact and law.

<u>First</u>, Defendants' critiques of Mr. Dugan's case-specific knowledge fail.  Mr. Dugan readily exceeds the "threshold of knowledge required to qualify a class representative," which "is low."  *In re Twitter Inc. Sec. Litig.*, 326 F.R.D. 619, 628 (N.D. Cal. 2018).  He identified four key defendants (Tr. at 42:2-24), summarized the misstatements and omissions (*see, e.g.*, Tr. at 48:5-49:17; 51:12-14; 62:25-63:8), and confirmed his familiarity with the Complaint (Tr. at 275:20-25; 277:7-10).

<u>Second</u>, there is no credibility issue—much less one "directly relevant to the litigation"—and no "dishonesty, such as a criminal conviction for fraud."  *Palana v. Mission Bay Inc.*, 2015 WL 4110432, at *4 (N.D. Cal. July 7, 2015) (Illston, J.).  At most, Defendants offer an immaterial criticism about whether Mr. Dugan "earned" a bachelor's degree even though he voluntarily clarified that he

---

[1] The cited portions of Mr. Dugan's deposition transcript are attached as Exhibit B to the Kubota Declaration.  Emphasis added and citations omitted unless otherwise noted.

LEAD PLAINTIFF'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF MOTION FOR CLASS CERTIFICATION (Case No. 3:22-cv-00105-SI)

earned the required credits, but the degree was not awarded due to a work-study requirement.

Third, Defendants assert that Mr. Dugan has a "conflict" due to post-disclosure purchases and a purportedly "atypical motivation for investing in Talis." Controlling law forecloses these arguments. This is not a Section 10(b) case, and "reliance is irrelevant." *Hildes v. Arthur Andersen LLP*, 734 F.3d 854, 859 (9th Cir. 2013). Defendants' assertion that there are "individual" materiality questions fails because the Supreme Court has made clear that materiality "is a question common to all members of the class. . . . ***In no event will the individual circumstances of particular class members bear on the inquiry***." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 459-60 (2013). In any event, there is nothing unusual—much less "directly in conflict with the class"—about Mr. Dugan's reasons for investing. Like any investor, Mr. Dugan cared that Talis had a product that worked reliably and accurately. (*Infra* at 8.) And Defendants' assertion that Mr. Dugan "did ***not*** invest in Talis because of its COVID-19 test" (emphasis in original) is a red herring: Mr. Dugan testified that he "invested based on the Talis One machine," and made further investments believing "that the Talis One machine would be able to identify COVID-19." (Tr. at 222:12-19.) Finally, there is nothing "unique" about Mr. Dugan's later purchases. Far from being indifferent to Defendants' falsehoods, as Talis became a dollar stock, Mr. Dugan made those purchases to average down—a common practice that "cannot be used to defeat a proposed class representative's typicality," as Defendants' own authority recognizes. *In re Countrywide Fin. Corp. Sec. Litig.*, 273 F.R.D. 586, 602 n.36 (C.D. Cal. 2009).

**Predominance Is Satisfied:** To conjure up individualized issues, Defendants claim they need to probe whether investors had "actual knowledge" of Talis's March 8, 2021 press release about its first, failed EUA submission. But that narrow, partial affirmative defense cannot outweigh the predominant Class-wide issues of liability and damages because Defendants invoke it for just ***one of nine*** misstatements and omissions; the press release is itself misleadingly incomplete; and any individualized issues of investor knowledge should be resolved after the Class-wide trial.

**Defendants Cannot Use "Tracing" to Shorten the Class Period:** Finally, Defendants assert—for the first time in this litigation—that Section 11 "tracing" requires the class period to end on August 11, 2021, rather than January 7, 2022. But tracing is a fact-intensive merits issue that courts regularly decline to address at class certification. Beyond that, Defendants' arguments are precluded

2

under Rule 37(c)(1) because they failed to identify *any* witnesses or produce *any* documents on "tracing" prior to their opposition brief. In all events, there is a Class-wide tracing methodology, as explained in the Declaration of Joshua Mitts, the David J. Greenwald Professor of Law at Columbia University. (Kubota Decl. Ex. A.) Thus, rather than prematurely shortening the class period, the Court should certify the Class and address tracing on the full record.

## II. STATEMENT OF FACTS

Talis's Registration Statement for its February 2021 IPO was false and misleading because it created the firm impression that Talis One was an existing, working product, with "5,000 instruments" "ordered" and purportedly being "manufactured" at scale. ¶¶5, 8. It falsely claimed that Talis One was "reliable," "highly accurate," and designed "to provide central lab levels of accuracy." ¶5. And it omitted known, material uncertainties and material risks regarding (1) the comparator assay used in Talis's EUA application, which violated FDA standards, and (2) Talis One's unreliability. ¶¶15-21.

Discovery has already borne out Plaintiff's allegations. For example:

- Before the IPO, Talis admitted that there were "substantial delays" in manufacturing and "*less than half of the units we have received are working*," which "is preventing Talis from achieving its timeline for launching this product" (Kubota Decl. Ex. C);

- Before the IPO, the FDA told Talis that an invalid rate "below 5% may be acceptable," while "a rate over 10% would be very high" and "concerning"; at the end of 2020, Talis One's invalid rate ranged from *12% to 19%* (Exs. D-E);

- Before the IPO, the FDA told Talis that its comparator assay, TaqPath, was "*not an acceptable comparator*" and "not considered a high sensitivity" test (Ex. F);

- Three days before the IPO, the FDA placed Talis's EUA submission "*on hold*"; a Talis scientist told CEO Coe that TaqPath was the "*key issue*" and "*[n]ot unexpected*" (Ex. G).

None of this was disclosed to Class members, who purchased over $250 million in Talis shares while Defendants had no working product. Talis One has never launched.

## III. ARGUMENT

### A. Lead Plaintiff Dugan Is Adequate

Mr. Dugan readily meets the adequacy standard under controlling law: he "understands his duties and is currently willing and able to perform them. [Rule 23] does not require more." *Loc. Joint Exec. Bd. of Culinary/Bartender Tr. Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir.

3

2001).  Mr. Dugan testified that he is "a fiduciary for the class" that has "been harmed by . . . Talis's misrepresentations" (Tr. at 41:15-23; 294:16-22); willing to appear at trial (*id.* at 295:3-9) and "[one] hundred percent" committed to prosecuting this action (*id.* at 304:18-23).  Tellingly, Defendants ignore this testimony—which is fatal to their arguments—and did not submit ***any*** of it to the Court.

Further, Mr. Dugan has overseen this litigation for nearly two years:

- Mr. Dugan invested "approximately 25 to 30" hours in the action before his deposition (Tr. at 18:11-13);

- Mr. Dugan reviewed all papers provided by counsel (*id.* at 297:23-298:1); communicated with counsel "at least every month or two" on average (*id.* at 298:11-16); monitored and directed counsel's activities (*id.* at 301:17-302:16); and met or spoke to counsel at least 11 times (including before moving for lead plaintiff appointment) (ECF 136-12 at 6 of 7); and

- Contrary to Defendants' suggestion that Mr. Dugan did not review the operative Complaint, Mr. Dugan testified that "I'm sure I looked at parts of it" before filing (Tr. at 275:21), "I do recognize this," and "much of the information that went into this are things that I've conveyed that happened through the process" (*id.* at 277:7-10).[2]

This is more than sufficient to establish Mr. Dugan's adequacy.  *See, e.g.*, *In re Montage Technology Grp. Ltd. Sec. Litig.*, 2016 WL 1598666, at *5 (N.D. Cal. Apr. 21, 2016) (Illston, J.) (lead plaintiff who was "aware of the proceedings and his duties as class representative . . . met the adequacy requirement"); *Bos. Ret. Sys. v. Uber Techs., Inc.*, 2022 WL 2954937, at *4 (N.D. Cal. July 26, 2022) (defendants "assert[ed] a higher bar to establishing adequacy than is required in this circuit").

Unable to dispute that Mr. Dugan understands and is effectively discharging his duties, Defendants pivot to arguments about his knowledge, "candor," and a purported "conflict."  Each fails.

### 1.  Mr. Dugan Readily Surpasses the Threshold of Knowledge

Defendants cite ***no*** case from this District holding that a class representative lacked sufficient case-specific "knowledge."  That is unsurprising, since "the threshold of knowledge required to qualify a class representative is low."  *Twitter*, 326 F.R.D. at 628.  Indeed, the *Twitter* court did not find "any case in this circuit finding a plaintiff inadequate on this ground."  *Id.*  Here, Mr. Dugan:

---

[2] Defendants' assertion that Mr. Dugan had "no meetings or calls with counsel five months before or after" the Complaint is misleading; most communications have been by email.  (Tr. at 299:13-14.)

4

LEAD PLAINTIFF'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF MOTION FOR CLASS CERTIFICATION (Case No. 3:22-cv-00105-SI)

- Correctly identified his former co-lead plaintiff, Leon Yu, as a "fellow from China" (Tr. at 267:3), recalled that Max Wisdom was Mr. Yu's company (*id.* at 270:2), and understood why the Court appointed co-lead plaintiffs (*id.* at 267:17-22);

- Correctly named four key Individual Defendants and their roles (CEO Coe, CFO Moody, Director Baker, and Director and Interim CEO Popovits) (Tr. at 42:2-24), belying Defendants' claim that he is "unfamiliar[]  with the parties" (Opp. at 11:23);

- Correctly summarized Defendants' misstatements and omissions about Talis One and Talis's submission to the FDA (*see, e.g.*, Tr. at 48:5-49:17; 51:12-14; 62:25-63:8); and

- Testified that Defendants' statement that Talis's "products are manufactured" and "assemble[d]" was misleading because "a completed working product was never manufactured" (Tr. at 172:9-10; *see also* 169:20-170:10), that Talis "had reason to believe that FDA approval was not imminent," and that Defendants should have accurately disclosed "the product's reliability" to shareholders (Tr. at 48:6-8; 51:12-14).

In short, Mr. Dugan—who is not an attorney—"explained the class claims in reasonably accurate terms." *In re Conseco Life Ins. Co. LifeTrend Ins. Sales & Mktg. Litig.*, 270 F.R.D. 521, 531 (N.D. Cal. 2010) (Illston, J.). This is more than sufficient, as plaintiffs who "are laypersons . . . cannot be expected to define the scope of the class or name all of the causes of action in more precise terms. The fact that they are familiar with the basis for the suit and their responsibilities as lead plaintiffs is sufficient to establish their adequacy." *Id.*

Defendants also place talismanic significance on whether Mr. Dugan read the Registration Statement or could recite every misstatement from memory. But class representatives are not required to "say exactly what alleged misstatements [were] made in [the] registration statement without looking at the complaint." *In re LendingClub Sec. Litig.*, 282 F. Supp. 3d 1171, 1182 (N.D. Cal. 2017). And courts in this District do not require that class representatives personally review SEC filings.[3] That is particularly true here, since Section 11 does not require reliance—much less "eyeball" reliance. In all events, Defendants' assertion that Mr. Dugan did not "recall seeing the Registration Statement at all" (Opp. at 11:23-24) is exaggerated (at best): Mr. Dugan testified that "typically, [the Registration Statement] is something that I may peruse parts of" (Tr. at 152:23-24).

---

[3] *See LendingClub*, 282 F. Supp. 3d at 1182 (rejecting arguments that class representative had "not reviewed any of [the defendant's] SEC filings" since they "overstate[d] the burdens placed upon lead plaintiffs"); *In re Snap Inc. Sec. Litig.*, 334 F.R.D. 209, 228 (C.D. Cal. 2019) ("[T]he fact that several Lead Plaintiffs had not read Snap's SEC filings . . . is insufficient to support a finding of atypicality.").

5

Tellingly, Defendants only invoke dated, largely out-of-Circuit cases with no resemblance to these facts.  In *Weisman v. Darneille*, 78 F.R.D. 669, 670 (S.D.N.Y. 1978), the plaintiff was "a felon convicted of violating Section 10(b)."  In *Koenig v. Benson*, 117 F.R.D. 330, 337 (E.D.N.Y. 1987), the plaintiff could not "comprehend" the reports at issue because he "only read[], wr[ote], and sp[oke] Yiddish."[4]  And *In re Kosmos Energy Ltd. Sec. Litig.*, 299 F.R.D. 133, 140 (N.D. Tex. 2014), rests on Fifth Circuit cases indicating "that the PSLRA raised the adequacy threshold"—a notion "the Ninth Circuit has expressly rejected."[5]  Defendants' only in-Circuit cases are inapposite:  In *McPhail v. First Command Fin. Plan., Inc.*, 247 F.R.D. 598, 612 (S.D. Cal. 2007), the plaintiff did not even "recognize the names of her attorneys," while *In re Quarterdeck Off. Sys., Inc. Sec. Litig.*, 1993 WL 623310, at *5-6 (C.D. Cal. Sept. 30, 1993), is a pre-PSLRA case where the plaintiffs purchased only 400 shares and scarcely "seemed to even care" about the litigation.  Here, Mr. Dugan purchased over 25,500 shares and is "[one] hundred percent" committed to prosecuting this action (Tr. at 304:18-23).  *See Snap*, 334 F.R.D. at 228-29 (distinguishing *Quarterdeck*).

## 2.  Defendants' Attacks on Mr. Dugan's "Candor" Are Meritless

There are no "serious questions about [Mr. Dugan's] credibility that would give rise to a unique defense."  *Crossen v. CV Therapeutics*, 2005 WL 1910928, at *6 (N.D. Cal. Aug. 10, 2005) (Illston, J.).  There "is inadequacy only where the representative's credibility is questioned on issues directly relevant to the litigation or there are confirmed examples of dishonesty, such as a criminal conviction for fraud."  *Palana*, 2015 WL 4110432 at *4.  Defendants offer neither.

First, Defendants note that two declarations filed during the lead plaintiff process stated that Mr. Dugan "earned a bachelor's degree from Elmira College" (ECF 30-3 ¶2).  At deposition, Mr. Dugan acknowledged near the beginning that he did not receive the degree, and clarified that although he had earned the credits to graduate in 1977, he was unable to complete a public service work-study

---

[4] *See also Darvin v. Int'l Harvester Co.*, 610 F. Supp. 255, 257 (S.D.N.Y. 1985) (plaintiff refused to "answer relevant questions"); *Pruitt v. Pers. Staffing Grp., LLC*, 2020 WL 3050330, at *6 (N.D. Ill. June 8, 2020) (representative did not even know "what a complaint is").

[5] *In re Silver Wheaton Corp. Sec. Litig.*, 2017 WL 2039171, at *8 (C.D. Cal. May 11, 2017).  Further, in *Kosmos*, the plaintiff had "virtually no knowledge about the case."  299 F.R.D. at 147.  And *Kosmos* is an outlier even in its own Circuit.  *See Prause v. TechnipFMC, PLC*, 2020 WL 3549686, at *5 (S.D. Tex. Mar. 9, 2020) (distinguishing *Kosmos* and certifying class).

6

requirement because he needed to find a paying job due to his financial situation.  (Tr. at 36:5-7; 265:24-266:8.)[6]  That voluntary clarification—wholly divorced from the merits—hardly raises a "credibility" issue.  "Multiple district courts have held that minor or inadvertent mistakes made in a sworn certification do not strike at the heart of Rule 23's adequacy requirement."  *In re Solar City Corp. Sec. Litig.*, 2017 WL 363274, at *6 (N.D. Cal. Jan. 25, 2017) (collecting cases).

<u>Second</u>, Defendants wrongly assert that Mr. Dugan's testimony that he "did not invest in Talis One for COVID-19 *initially*" contradicted his interrogatory response stating that he considered (among other things) "the impression that Talis One was a real, working product that could successfully detect COVID-19."  There is no contradiction.  Mr. Dugan testified that he "invested based on the Talis One machine," and, after his initial investment, purchased shares based on the impression "that the Talis One machine would be *able to identify COVID-19*."  (Tr. at 222:12-19.)  Likewise, Mr. Dugan's deposition testimony is consistent with his interrogatory response stating that he "believes he reviewed a portion of the Registration Statement." (*Supra* at 5.)

<u>Finally</u>, Defendants have raised no issues going "directly to the merits."  Rather, issues such as "why" Mr. Dugan invested are irrelevant under controlling law, as discussed below.[7]

### 3. Defendants Cannot Fabricate a "Conflict" Based on Mr. Dugan's Typical "Investment Motivation" and Purchase History

Defendants next attempt to manufacture a "conflict" based on (1) mischaracterizing Mr. Dugan's "reasons" for investing in Talis, and (2) the unsurprising fact that Mr. Dugan, like many other Class members, purchased shares after Talis's share price declined.  Both arguments fail.

**Controlling Law Forecloses Defendants' Arguments:**  Defendants cite *no* Section 11 case where a class member's subjective views or trading history were even relevant, much less defeated

---

[6] Consistent with Mr. Dugan's testimony that "we had a revision to this" (Tr. at 265:16-17), the statement about the degree was removed from his most recent declaration (ECF 127-2).

[7] Confirming the point, Defendants rely on *Kline v. Wolf*, 702 F.2d 400, 403 (2d Cir. 1983), a Section 10(b) case where the plaintiff "testified that he had *relied* upon a report which he now admits did not exist at the time."  Defendants' other cases involved contradictory statements on key issues for liability or adequacy.  *See Trim v. Mayvenn, Inc.*, 2022 WL 17584237, at *3 (N.D. Cal. Dec. 12, 2022) (use of personal number for business purposes); *Savino v. Computer Credit, Inc.*, 164 F.3d 81, 87 (2d Cir. 1998) ("letters that form the very basis" for suit); *Searcy v. eFunds Corp.*, 2010 WL 1337684, at *5 (N.D. Ill. Mar. 31, 2010) (misstatements "formed the basis for" adequacy).  No such issue exists here.

7

class certification. That is unsurprising, since "reliance is irrelevant in [this] § 11 case," and "a § 11 case will **never demand individualized proof** as to an investor's reliance or knowledge." *Hildes*, 734 F.3d at 859-60. Defendants' assertion that their misstatements and omissions were "not material to" Mr. Dugan also fails, "[b]ecause materiality is judged according to an **objective standard**." *Amgen*, 568 U.S. at 459. Thus, "the materiality of [Defendants'] alleged misrepresentations and omissions is a question common to all members of the class. . . . In no event will the individual circumstances of particular class members bear on the inquiry." *Id.* at 459-60. [8] Mr. Dugan's "individual circumstances" are thus irrelevant. Defendants cite only two stale decisions, *Koenig* (1987) and *Safeguard* (2003), that pre-date *Amgen*, and both involved the reliance element of Section 10(b).

**Mr. Dugan's "Investment Motivation" Does Not Pose a "Conflict":** Far from "antagonistic" to the Class, Mr. Dugan's reasons for investing in Talis are typical. For example, among other things, he considered "the reliability of [Talis's] machine" and believed Talis "had a finished product" that "worked" and was "being manufactured now successfully." (Tr. at 103:22-104:19; 107:22-23; 123:8-22.) Nothing about this testimony could "derail the issue of materiality," as Defendants claim, since a "finished, tested product is almost certainly the single most important piece of information for an investor deciding whether to invest in a start-up company." *SEC v. Platforms Wireless Int'l Corp.*, 617 F.3d 1072, 1094-95 (9th Cir. 2010).

Moreover, while reliance is not required, Mr. Dugan testified that Defendants' misstatements and the topics at issue **did** influence his investment decisions. (*See, e.g.*, Tr. at 196:1-9 & 198:2-4 (misstatement about "highly accurate results influenced my decision to invest in this company").) [9] Defendants' assertions that Mr. Dugan did not invest because of Talis's COVID-19 test fail, since Mr. Dugan made clear that he focused on whether Talis had a working machine—the hardware necessary to test for **any** disease—and focused on COVID-19 after his initial investment (*supra* at 7). Mr. Dugan further testified that "if it's incumbent upon the product to succeed, the FDA approval would be

---

[8] *See also Blackie v. Barrack*, 524 F.2d 891, 909 (9th Cir. 1975) ("Every class member shares an overriding common interest in establishing the existence and materiality of misrepresentations.").

[9] *See also* Tr. at 179:15-21 ("I don't know whether I've read this exact statement . . . but I have read their promises about building and delivering and selling at scale . . ."); 208:3-11; 310:5-12 & 312:23 (important to know Talis had only received 1 percent of 5,000 instruments; "misleading" to omit).

8

LEAD PLAINTIFF'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF MOTION FOR CLASS CERTIFICATION (Case No. 3:22-cv-00105-SI)

important to me," and that "the clear path to FDA approval, I think, was misleading" because Talis "had reason to believe that FDA approval was not imminent." (Tr. at 51:12-14; 63:7-8; 83:23-25.)[10]

Defendants' further assertion that Mr. Dugan had "no opinion" on the falsity of "parts" of the challenged statements is misleading. For example, as to Defendants' misstatement that "our tests are just as accurate and reliable as central lab testing," Mr. Dugan specifically testified that the "tests were **not** just as accurate and reliable as central lab testing." (Tr. at 215:14-15; 217:10 ("That's not true.").) He merely had "no opinion" on the statement's reference to Talis "collecting data" (*id.* at 216:10-12).

**Post-Disclosure Purchases Are Irrelevant and Routine:** Defendants point to the fact that Mr. Dugan first purchased Talis shares on March 26, 2021 (after Talis withdrew its first EUA submission) and purchased additional shares in April and May 2022 (after this action was filed).[11]

These purchases have no bearing on adequacy or typicality. To begin, Defendants cannot overcome the fact that reliance is irrelevant in this Section 11 case. Thus, they solely cite Section 10(b) cases involving reliance.[12] Even under Section 10(b), "numerous cases" reject Defendants' arguments. *See, e.g.*, *Montage*, 2016 WL 1598666 at *4. Defendants never show that "the timing of [Mr. Dugan's] trades makes his behavior unique," much less demonstrate that it "threaten[s] to become the focus of the litigation." *Id*. Indeed, since Talis's average weekly trading volume was 1.27 million shares (Nye Report ¶7), many "other class members may also have purchased" at similar times. *In re Connetics Corp. Sec. Litig.*, 257 F.R.D. 572, 577 (N.D. Cal. 2009) (Illston, J.).

---

[10] In asserting that Mr. Dugan said two challenged statements did not "influence" his investments, Defendants omit relevant context: in both instances, defense counsel first asked whether Mr. Dugan had "seen" or "review[ed]" the statements before, injecting the issue of "eyeball" reliance (Tr. at 167:9-16; 182:16-183:3 ("If I hadn't **seen it**, it would not have had any influence.")).

[11] Defendants' footnoted assertion (Opp. at 16 n.9) that Mr. Dugan's PSLRA certification "omitted" the April and May 2022 transactions to "avoid this conclusion" is specious because the class period ended in March 2022 (ECF 74 at 5 of 89). As the PSLRA requires, the certification accurately listed "all of [his] transactions . . . in the security that is the subject of the complaint during the class period." 15 U.S.C. § 77z–1(a)(2)(A)(iv). Complying with the PSLRA hardly "raises issues of credibility."

[12] In *Koenig*, 117 F.R.D. at 334, 336, the plaintiff was suing in a related derivative suit and purchased shares after the issuer's bankruptcy. In *In re Valence Tech. Sec. Litig.*, 1996 WL 119468, at *5 (N.D. Cal. Mar. 14, 1996), the plaintiffs tripled or quadrupled their holdings after a corrective disclosure. In *In re Safeguard Scis.*, 216 F.R.D. 577, 582-83 (E.D. Pa. 2003), one plaintiff was a professional "day trader"; another accused his broker of providing "misleading financial advice"; and the third admittedly "wasn't concerned" about the conduct and statements at issue.

LEAD PLAINTIFF'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF MOTION FOR CLASS CERTIFICATION (Case No. 3:22-cv-00105-SI)

Defendants also exaggerate Mr. Dugan's later purchases. After this action was filed, he spent $26,249.50 to purchase Talis shares (ECF 136-11)—a mere **11%** of the $238,093.76 he spent before litigation (ECF 30-6). In *SEB Inv. Mgmt. AB v. Symantec Corp.*, 335 F.R.D. 276, 284 (N.D. Cal. 2020), Judge Alsup held that post-disclosure purchases of $7.1 million (or 31% of $23 million in prior purchases) were not "disproportionate" and certified the class. The same is true here.

Moreover, Defendants never explain how Mr. Dugan's purchases create any sort of "conflict"—and they cannot, since Section 11 damages are governed by statutory formula. Further, Mr. Dugan testified that he is equally incentivized to pursue claims on behalf of class members who purchased earlier than himself. (Tr. at 311:4-10 ("Everyone should be made right on this.").)

In all events, the reason for Mr. Dugan's later purchases is typical: he explained that as Talis became "a dollar stock," "I averaged down, thinking that it just couldn't be true" that Talis's directors and officers would "try to pull off another Theranos." (Tr. at 251:21-252:9.) Defendants' own authority recognizes that such "averaging down" is "a common technique used to decrease the average cost of an investment [that] cannot be used to defeat a proposed class representative's typicality." *Countrywide*, 273 F.R.D. at 602 n.36. And it does not mean that Mr. Dugan "didn't care whether the prior statements were true or false." (Tr. at 310:17-20 ("No. It didn't mean that.").)

### B. Mr. Dugan Is Typical

Satisfying typicality, Mr. Dugan's claims "are reasonably co-extensive with those of absent class members." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). Defendants fail to show any unique defense—much less any "that will become the focal point of this case"—because Mr. Dugan's reasons for investing and trading history are typical (*supra* at 8-10); Defendants' "credibility" attacks are groundless (*supra* at 6-7); the narrow "actual knowledge" defense is not unique (*infra* at 10-12); and "tracing" after August 11, 2021 is a Class-wide issue (*infra* at 14-15).

### C. A Narrow "Actual Knowledge" Defense to One of Nine Misstatements and Omissions Cannot Defeat Predominance or Superiority

Defendants' assertion that Plaintiff offers "no evidence" of predominance is wrong. Falsity and materiality—the only elements of Plaintiff's *prima facie* Section 11 case, *see Kaplan v. Rose*, 49 F.3d 1363, 1371 (9th Cir. 1994)—are common questions subject to Class-wide proof. Likewise,

10

Section 11's damages formula is readily applied on a Class-wide basis.  (Nye Report ¶¶12-18.)

Defendants do not dispute any of this.  Instead, their sole attempt to defeat predominance rests on Section 11's narrow affirmative defense of "actual knowledge."  They contend that purchasers after March 8, 2021 are subject to "individual inquiry" about whether they knew about Talis's March 8, 2021 press release reporting the withdrawal of Talis's EUA submission.  Defendants' argument fails.

First, Defendants only assert "actual knowledge" for **one of nine** misstatements and omissions (concerning Talis's flawed comparator assay).  Defendants do not assert an "actual knowledge" defense for any of their seven affirmative misstatements or their omission of Talis One's inaccuracy and unreliability.  Unsurprisingly, Defendants cite no case where an affirmative defense to just one of nine misstatements and omissions could "outweigh common issues" to defeat predominance.  *In re IndyMac Mortg.-Backed Sec. Litig.*, 286 F.R.D. 226, 238 (S.D.N.Y. 2012).

None of Defendants' cases involved such facts.  Defendants primarily rely on *Vignola v. Fat Brands, Inc.*, 2020 WL 1934976, at *5 (C.D. Cal. Mar. 13, 2020), but there, the "actual knowledge" defense was dispositive because **all** of "the allegedly omitted information" was "public information, reported **prior to** the IPO."  Here, the March 8 press release occurred nearly a month **after** the IPO and only bears on one of nine misstatements and omissions.[13]  Moreover, both cases in this District to cite *Vignola* have rejected it.  *See In re Lyft Inc. Sec. Litig.*, 2021 WL 3711470, at *7 (N.D. Cal. Aug. 20, 2021) ("Defendant has not shown that any individualized issues of investor knowledge will predominate over common issues."); *Uber*, 2022 WL 2954937 at *3 (same).

Second, Defendants' effort to distinguish *Lyft* and *Uber* fails.  As in those cases, Defendants do not show that Talis's March 8 press release "conveyed all of the [omitted] truth."  *Lyft*, 2021 WL 3711470 at *7.  The press release stated that "[i]n late February, the FDA informed the company that

_____

[13] Defendants' other citations also fail.  In *In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 43 (2d Cir. 2006), "the initial IPO allocants . . . were fully aware of the obligation that is alleged to have artificially inflated share prices."  With respect to *N.J. Carpenters Health Fund v. Residential Cap., LLC*, 272 F.R.D. 160, 169 (S.D.N.Y. 2011), Defendants omit that the same judge later certified the class, holding that common issues predominated because "class members were similarly situated with respect to" their access to information.  2012 WL 4865174, at *3 (S.D.N.Y. Oct. 15, 2012), *modified in part*, 288 F.R.D. 290, 291 (S.D.N.Y. 2013).  And *Kosmos*, 299 F.R.D. at 153, involved assertions of actual knowledge of the only matter at issue (production problems at an oil field).

11

it cannot ensure the comparator assay used in the primary study has sufficient sensitivity to support Talis's EUA application." But it did *not* disclose that *before* the IPO, the FDA had explicitly warned Talis that the comparator assay was "not . . . acceptable" and placed Talis's EUA submission "on hold." (*Supra* at 3.) In all events, the "content of publicly available sources" and whether they "conveyed all of the [omitted] truth" is another Class-wide question. *Lyft*, 2021 WL 3711470 at *7.

Third, Defendants' assertion that a class action is not "superior" is meritless. "Defendants ignore the fact that knowledge is an affirmative defense, not a required element of a Securities Act claim." *IndyMac*, 286 F.R.D. at 238. Thus, at summary judgment or trial, the fact-finder will decide the Class-wide issues of falsity and materiality *before* any inquiry into individual Class members' "actual knowledge."[14] Any limited "actual knowledge" inquiry—as to just one of nine misstatements and omissions—plainly does not outweigh the benefits of resolving common issues in one trial.

### D.    Defendants Cannot Use "Tracing" to Shorten the Class Period

Defendants concede that there is no "tracing" issue from the February 11, 2021 IPO through August 11, 2021, a period when "the only Talis shares in the public market were those issued and registered to the IPO." (Opp. at 24.) Nonetheless, Defendants contend that "tracing" requires the class period to end on August 11, 2021 (rather than January 7, 2022), when a 180-day contractual lock-up expired and certain non-IPO shares purportedly became "commingled" with the IPO shares.

Defendants are wrong. Their improper effort to use class certification to short-circuit full fact and expert discovery (1) merely raises a Class-wide merits issue unnecessary to address now, (2) is precluded by Rule 37(c)(1), and (3) fails in all events because there is a Class-wide methodology to address "tracing" with common proof.

#### 1.    Defendants' "Tracing" Argument Is Unnecessary to Address Now

To begin, "tracing" is unnecessary to address now because the Class is already limited to shares issued "pursuant and/or traceable to" the Registration Statement (¶241). *See Sudunagunta v. NantKwest, Inc.*, 2018 WL 3917865, at *9 (C.D. Cal. Aug. 13, 2018) ("The definition of the proposed

---

[14] Similarly, in Section 10(b) cases, courts grant class certification based on the fraud-on-the-market presumption and address rebuttals of individual reliance after Class-wide issues are resolved.

12

class already addresses traceability"). For decades, courts in this District and Circuit have declined to resolve "tracing" arguments at class certification.[15] That is because "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Amgen*, 568 U.S. at 466. Here, "tracing" is a merits issue that necessarily requires fact and expert discovery. There is no basis to "preemptively preclude" all purchases after August 11, 2021 "without providing an opportunity to develop the factual issues on which resolution of the tracing question may turn." *In re Smart Techs., Inc. S'holder Litig.*, 295 F.R.D. 50, 62 (S.D.N.Y. 2013).

### 2. Rule 37(c)(1) Bars Defendants' "Tracing" Argument

Defendants' argument also fails because it rests solely on information and witnesses that Defendants omitted from their initial disclosures and only disclosed two months *after* Plaintiff moved for class certification. Under Rule 37(c)(1), because Defendants did not "provide information or identify [any of their] witness[es] as required by Rule 26(a) or (e)," they are "not allowed to use that information or witness[es] to supply evidence on [this] motion.[16]

Specifically, Defendants did not produce *any* discovery on "tracing" before Plaintiff's October 13, 2023 class certification motion. Their "tracing" argument relies entirely on the declarations of Matthew Lee, Lia Ludwig, and Meghan Shevlin and their 13 exhibits. In violation of Rule 26(a)(1) and (e), Defendants failed to identify *any* of these witnesses in their initial disclosures or produce any of the exhibits before their December 12 opposition. (Kubota Decl. ¶11 & Ex. H.) Defendants' only excuse—that they did not conclusively decide to use the materials until shortly before filing—fails because "the text of Rule 26(a)(1) dispels the notion that a party may wait to turn over pertinent materials until it has concrete plans to use them in support of its defense." *Brown v. Wal-Mart Store, Inc.*, 2018 WL 2011935, at *3 (N.D. Cal. Apr. 27, 2018). Behind the scenes, Defendants spent weeks

---

[15] *See id.*; *Snap*, 334 F.R.D. at 224 ("declin[ing] to narrow the relevant Class Period for the Securities Act claims" based on entry of non-IPO shares); *In re Worlds of Wonder Sec. Litig.*, 1990 WL 61951, at *9 (N.D. Cal. Mar. 23, 1990) (tracing "goes to the merits of their claims and should not be addressed in a class certification motion"); *In re Eagle Computer Sec. Litig.*, 1986 WL 12574, at *8 (N.D. Cal. Mar. 31, 1986) (certifying Section 11 class; "defendant's tracing argument must be deferred").

[16] Rule 37(c)(1)'s "self-executing, automatic sanction" gives "teeth" to Rule 26 "by forbidding the use . . . of any information required to be disclosed by Rule 26(a) that is not properly disclosed." *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001) (cleaned up).

13

gathering these materials:  By November 2023, Defendants had secretly begun contacting witnesses and collecting non-public documents on "tracing."  (Kubota Decl. ¶13.)  Without disclosing any of those witnesses or documents, Defendants represented to the Court on December 7, 2023 that their "existing initial disclosures are **complete and up to date**" (ECF 132).  By then, Defendants had already contacted at least two declarants; the Ludwig Declaration was signed the next day.  (ECF 136-17.)

Rule 37(1)(c) requires exclusion.  For example, in *Brown v. Wal-Mart Stores, Inc.*, 651 F. App'x 672, 674 (9th Cir. 2016), the Circuit affirmed the exclusion of the defendant's affidavits because "Wal-Mart was obliged under [Rules] 26(a) and (e) to disclose these witnesses to Plaintiffs before relying on their statements in response to Plaintiffs' motion for class certification."[17]  The same is true here.  And Defendants have failed to carry their "burden . . . to prove" that their violation was substantially justified or harmless.  *Yeti*, 259 F.3d at 1107.  Indeed, the prejudice is clear:  Defendants failed to produce **any** discovery on "tracing" before filing their opposition brief, yet now ask the Court to shorten the class period on the incomplete record their own violations have created.

### 3.  "Tracing" Will Be Addressed with a Class-Wide Methodology

In all events, "tracing" does not raise any Rule 23 issue because it will be addressed with a Class-wide methodology and common proof, as the Mitts Declaration explains.  For shares purchased after August 11, data obtainable in discovery from DTC and other sources, paired with standard accounting methods, permit the construction of a reliable "chain of title" showing the ownership of each Talis share at each point in time.  (Mitts Decl. ¶¶44-47.)[18]  This methodology can be applied on a Class-wide basis.  (*Id.* ¶¶48-50.)[19]

None of Defendants' purported "evidence" addresses, let alone defeats, this Class-wide methodology.  Defendants contend that between August 13 and 17, 2021, Meridian, Cal Tech, and

---

[17] *See also Day v. GEICO Cas. Co.*, 2022 WL 16556802, at *5 (N.D. Cal. Oct. 31, 2022) (defendant foreclosed from using "a Declaration from Russell Ward . . . and supporting exhibits" to oppose class certification because Ward was not identified in initial disclosures).

[18] This methodology is not "statistical tracing," as it yields a definite conclusion on ownership.  As a result, Defendants' citations to cases rejecting statistical tracing are inapposite.

[19] Defendants cannot complain that Plaintiff offers Professor Mitts' methodology on reply, since they did not disclose any facts concerning non-IPO shares or "tracing" until their opposition brief.

14

Matthew Lee (a former Talis employee) transferred about 722,000 purported non-IPO shares to DTC accounts registered with the Bank of New York, Northern Trust, and E*Trade, respectively. (Ludwig Decl. ¶¶4-6.)  But merely *transferring* unregistered shares to DTC is not enough.  Defendants' simplistic assertion that IPO and non-IPO shares were "commingled" ignores that DTC has over 800 DTC Participant firms, each with separate accounts and records.  At most, Defendants show only that unregistered shares were transferred to just three of them; but such transfers do not establish that unregistered shares were sold or reached any other DTC Participant.  (Mitts Decl. ¶¶24-41.)

The only actual *sale* Defendants identify is former Talis employee Lee's purported sale of 349 shares—just 0.002*%* of the nearly 16 million IPO shares—on August 30, 2021.  But Defendants have taken the position that trading by "any non-officer employee of Talis" is "*not relevant to this case*" (Kubota Decl. Ex. P at 47), which bars their attempt to use Lee's trading to shorten the class period.  In any event, Lee's sale provides no basis to cut off the class period on August 11, since it settled on September 1, 2021 (Lee Decl. Ex. A).  After September 1, Lee's sale is readily addressed through Professor Mitts' Class-wide methodology (Mitts Decl. ¶42) and hardly warrants a categorical finding that no later purchases can be traced.

Finally, Defendants' sole authority shortening a class period due to "tracing" is inapposite.[20]  In *In re Honest Co. Sec. Litig.*, 2023 WL 3190506, at *5 (C.D. Cal. May 1, 2023), the plaintiff did not offer *any* tracing methodology or contest the defendants' evidence.[21]  Here, Professor Mitts offers a Class-wide methodology and Defendants' evidence cannot be considered.

## IV.    CONCLUSION

For the foregoing reasons, Lead Plaintiff respectfully requests that the Court grant this motion, certify the Class, appoint Lead Plaintiff as Class Representative, and appoint BFA as Class Counsel.

---

[20] *Perrin v. Sw. Water Co.*, 2014 WL 10979865, at *8 (C.D. Cal. July 2, 2014), and *Abbey v. Computer Memories, Inc.*, 634 F. Supp. 870, 876 (N.D. Cal. 1986), were summary judgment decisions that involved secondary offerings.  *Sundaram v. Freshworks, Inc.*, 2023 WL 1819158, at *5 (N.D. Cal. Feb. 8, 2023), rejected a lead plaintiff who first purchased when "only a little more than a third" of shares were issued in the IPO.

[21] The *Honest Co.* court also carved in "all persons and entities that acquired ownership" of accounts or portfolios containing shares purchased before the lock-up expired, even if the accounts or portfolios were acquired later.  *Id.* at *4-5.  At minimum, any such carve-in must be applied here.

LEAD PLAINTIFF'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF MOTION FOR CLASS CERTIFICATION (Case No. 3:22-cv-00105-SI)

Dated:  January 12, 2024                    Respectfully submitted,


By: */s/ Joseph A. Fonti*            By: */s/ Jonathan D. Park*
**BLEICHMAR FONTI & AULD LLP**        **POMERANTZ LLP**
Joseph A. Fonti (*pro hac vice*)      Jennifer Pafiti (Bar No. 282790)
jfonti@bfalaw.com                     1100 Glendon Avenue, 15th Floor
Evan A. Kubota (*pro hac vice*)       Los Angeles, California 90024
ekubota@bfalaw.com                    Telephone: (310) 405-7190
7 Times Square, 27th Floor            Facsimile: (212) 661-8665
New York, New York 10036              jpafiti@pomlaw.com
Tel: (212) 789-1340
Fax: (212) 205-3960                   Jeremy A. Lieberman (*pro hac vice* application
                                      forthcoming)
    – and –                           Jonathan D. Park (*pro hac vice*)
                                      600 Third Avenue, 20th Floor
Lesley E. Weaver (Bar No. 191305)     New York, New York 10016
lweaver@bfalaw.com                    Telephone: (212) 661-1100
Matthew S. Melamed (Bar No. 260272)   Facsimile: (212) 661-8665
mmelamed@bfalaw.com                   jalieberman@pomlaw.com
1330 Broadway, Suite 630              jpark@pomlaw.com
Oakland, California 94612
Tel.: (415) 445-4003                  *Additional Counsel for the Putative Class*
Fax: (415) 445-4020


*Counsel for Lead Plaintiff Martin Dugan*
*and Lead Counsel for the Putative Class*


**THE SCHALL LAW FIRM**
Brian Schall (Bar No. 290685)
2049 Century Park East, Suite 2460
Los Angeles, California 90067
Telephone: (424) 303-1964
brian@schallfirm.com


*Additional Counsel for Lead Plaintiff Martin*
*Dugan*


## CERTIFICATION

I, Joseph A. Fonti, am the ECF user whose identification and password are being used to file

this **LEAD PLAINTIFF'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN**

LEAD PLAINTIFF'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF
MOTION FOR CLASS CERTIFICATION (Case No. 3:22-cv-00105-SI)

**SUPPORT OF MOTION FOR CLASS CERTIFICATION**.  In compliance with Civil Local Rule 5-1(i), I hereby attest that all other signatories listed and on whose behalf this filing is submitted have authorized this filing and concur in its content.

*/s/ Joseph A. Fonti*
Joseph A. Fonti
