# EXHIBIT J



Patrick E. Gibbs
T: +1 650 843 5535
pgibbs@cooley.com

By E-Mail ekubota@bfalaw.com

December 18, 2023

Evan A. Kubota
Bleichmar Fonti & Auld LLP
7 Times Square, 27th Floor
New York, NY 10036

**Re:      In re Talis Biomedical Securities Litigation, No. 22-cv-00105-SI (N.D. Cal.)**

Dear Evan:

I write in response to your December 14, 2023, letter demanding that Defendants "withdraw the Lee, Ludwig, and Shevlin Declarations, including their exhibits (and Exhibits 8 and 13 to the Eagan Declaration)."

As discussed below, there has been no violation of Rule 26(a), and in any event, there is no basis for any sanction under Rule 37(c)(1).  Accordingly, Defendants will not withdraw the Lee, Ludwig, and Shevlin declarations and/or exhibits.  The facts supported by these declarations and exhibits are simple, straightforward, and not subject to any reasonable dispute, but if you believe you need to seek documents and/or deposition testimony about this evidence, we are willing to agree to a reasonable extension of time for Plaintiff to file a reply in support of his motion for class certification.

Matthew Lee, Lia Ludwig, and Meghan Shevlin were not identified in our May 24, 2023, initial disclosures because, at that time, we had not identified any of them as an "individual likely to have discoverable information . . . that [Defendants] may use to support [their] claims or defenses."  Among other things, at that time, we had no reason to assume that Plaintiff would move to certify a class that included purchases after the expiration of the post-IPO lock-up but without proposing any method for tracing those shares back to the IPO.  The lock-up was plainly disclosed in Talis's Registration Statement, and the tracing implications of a lock-up expiration are hardly a secret.  *See, e.g., In re Honest Co. Sec. Litig.*, 2023 WL 3190506, at *4-5 (C.D. Cal. May 1, 2023) (limiting class to shares purchased before lock-up expiration because "[t]racing a particular share to the IPO is impossible once non-IPO shares became commingled").  And although (in an abundance of caution) we included lack of standing among the affirmative defenses in our amended answer, tracing shares to the registration statement is an element of Plaintiff's claim, which Plaintiff bears the burden of proving.  *Slack Techs., LLC v. Pirani*, 598 U.S. 759, 770 (2023) (holding Section 11 "requires a plaintiff to plead and prove that he purchased shares traceable to the allegedly defective registration statement").  Moreover, Lead Plaintiff chose to incorporate traceability into his proposed class definition, and it is Plaintiff's burden to show, with evidence, that common issues predominate.  *See, e.g., Vignola v. Fat Brands, Inc.*, 2020 WL 1934976, at *5 (C.D. Cal. Mar. 13, 2020).  As Lead Counsel, you evidently made a tactical decision to simply ignore the issue, but in any event, as of May 2023, we had no reason to develop arguments and evidence on this issue, nor had we done so.  We did so only after Plaintiff filed his motion for class certification.

On December 7, 2023, we represented that our initial disclosures were up to date and complete because, as of that date, the representation was true.  As of that date, we had not even attempted to contact Matthew Lee, and therefore we had no idea whether he would even agree to speak to us.  We certainly did not know what information he possessed or whether any such information might support Defendants' claims or defenses.  Indeed, we first spoke to Mr. Lee on Friday, December 8, just two business days and four

# Cooley

Evan A. Kubota
December 18, 2023
Page Two

calendar days before we filed Mr. Lee's declaration on December 12.  Rule 26(e) requires supplemental disclosures to be made "in a timely manner" – not in real time – and only if the additional information "has not otherwise been made known to the other parties during the discovery process or in writing."  In this case, Mr. Lee's identity and information were disclosed to Plaintiff "in writing" when we filed our opposition and supporting materials.  It would be absurd to suggest that Defendants violated Rule 26(a) by disclosing Mr. Lee's identity and information on Tuesday, December 12, when we first made contact with him just two business days and four calendar days before that date.

In any event, even if Rule 26(a) or Rule 37(c)(1) could be read to require a supplemental disclosure before our opposition brief was filed (*i.e.*, Friday December 8 or Monday December 11), the brief "delay" in disclosure would be substantially justified and/or harmless.  Over that weekend, we were still investigating facts and gathering evidence while also conceptualizing, researching, and drafting our opposition brief.  That this all occurred over the course of a weekend easily justifies a delay of one or two business days.  Moreover, there is absolutely no harm to Plaintiff:  had we made a supplemental disclosure on (for example) Friday or Monday before filing our brief, you would be in no different position than you are now.  And as noted above, we are willing to agree to a reasonable extension of time for Plaintiff's reply, should you wish to take discovery about Mr. Lee's Talis stock transfer and trades.  There is no discovery deadline or other impediment to you doing so.  Please let us know as soon as possible if you wish to take any discovery pertaining to Mr. Lee's stock transfer and/or stock sales.

Regarding Ms. Shevlin and Ms. Ludwig, we had spoken to both of them shortly before December 7, 2023, but we had done so for purposes of investigating what information was available from our client Talis and/or from its transfer agent, Broadridge.  Without waiver of any attorney work product or attorney-client privilege, in broad strokes, that investigation began during the second half of November (which, of course, included the Thanksgiving holiday).  We began by talking to Ms. Shevlin, an employee of our client, Talis.  We spoke to Ms. Ludwig at Broadridge for the first time on December 1, 2023.  But at that point, we were still in the process of investigating and assessing potential tracing arguments, and still in the process of deciding which arguments (if any) to make in opposition to Plaintiff's motion, whether to submit any evidence in support of those arguments, and (if so) what evidence to use.  Those questions were still open and under active consideration through December 7, 2023.  We recognize, of course, that Rule 26(a) can require disclosure before a party is certain that it will use information from a potential witness.  But at the same time, it plainly did not require us to involve Plaintiff's counsel in our ongoing factual investigation or to provide you with real time visibility into the development of our arguments in opposition to class certification.

Perhaps more fundamentally, the mere fact that Ms. Shevlin and Ms. Ludwig were our contacts at Talis and Broadridge did not transform them into fact witnesses (or even potential fact witnesses) in their individual capacity.  To this day, neither of them has personal knowledge of any underlying facts about this case.  They have done nothing more than consult corporate records (at our request, as part of our investigation), provide copies of those corporate records to us, and then sign declarations to authenticate and explain those records.  As such, the information referenced in Ms. Shevlin's and Ms. Ludwig's declarations is from Talis's corporate records (some of which are maintained by Broadridge, but all of which belong to Talis), not from Ms. Shevlin or Ms. Ludwig in their individual capacities.  By way of illustration, if either of them had left her employment in the days before our opposition brief was filed, she would not have signed a declaration and would not have any ongoing involvement in this case at all.  If either of them were served with a subpoena, neither of them would have had possession, custody, or control over the corporate records that they attached to and authenticated in their declarations, and as far as we know, would not otherwise have any relevant or discoverable information in their possession, custody, or control.  Accordingly, we do not believe Ms. Shevlin or Ms. Ludwig are covered by Rule 26(a), even today.



Evan A. Kubota
December 18, 2023
Page Three

But even if they were, their identities were "timely" disclosed "in writing" with the filing of their declarations and supporting exhibits on December 12, and any purported delay in that disclosure was substantially justified and/or harmless.  If one assumes, for example, that Defendants should have disclosed Ms. Shevlin and/or Ms. Ludwig on December 1, 2023, the first date we made contact with Ms. Ludwig (which is absurd, given the number of unanswered questions as of that date), both women were identified when we filed our opposition papers one week and four days later – more than timely by any reasonable standard, and in any event, substantially justified by the press of time and work preparing our opposition papers.  And as with Mr. Lee, if we had made such a disclosure in the days or in the week and a half or so before we filed our opposition papers, Plaintiffs would be in substantially the same position they are in now.  If Plaintiff wishes to take discovery into the information in the Shevlin and/or Ludwig declarations and exhibits, we are willing to agree to a reasonable extension of time for Plaintiffs to file their reply.

Your letter asks why we did not previously produce the documents and exhibits referenced in your letter.  The answer to that is suggested by the discussion above:  We only just obtained these documents in the course of our investigation into this issue over the last several weeks, and we only decided whether to even make this tracing argument in the days leading up to filing our opposition brief.  The earliest we could have produced them (on the theory that they were responsive to Plaintiff's prior requests) was a matter of days before they were attached to our filing.  We have not passed any document production deadlines, and we had never previously represented that our production of any category of requested documents was complete.  As with the names of the individuals discussed above, moreover, Plaintiffs have suffered no harm from receiving these documents with our opposition papers on December 12, as opposed to some number of days earlier.  As to the redactions, we were required to file under seal at the request of one of the pre-IPO shareholders.  In light of the concerns articulated in your letter, we are currently preparing and expect to produce today an unredacted version of the relevant exhibits that will be ready for production.

I hope and expect that this resolves the matter, but if not, we would be more than happy to discuss these issues by phone rather than continuing to exchange letters.

Sincerely,

Patrick E. Gibbs

cc:     Joseph A. Fonti (jfonti@bfalaw.com)
        Jonathan D. Park (jpark@pomlaw.com)