**BLEICHMAR FONTI & AULD LLP**
Lesley E. Weaver (Bar No. 191305)
1330 Broadway, Suite 630
Oakland, California 94612
Telephone: (415) 445-4003
Facsimile: (415) 445-4020

*Counsel for Lead Plaintiff Martin Dugan*
*and Lead Counsel for the Putative Class*

*[Additional counsel on signature page]*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE TALIS BIOMEDICAL SECURITIES LITIGATION | Case No. 3:22-cv-00105-SI |
| | CLASS ACTION |
| THIS DOCUMENT RELATES TO: | **LEAD PLAINTIFF'S OBJECTIONS TO DEFENDANTS' SUR-REPLY EVIDENCE IN OPPOSITION TO CLASS CERTIFICATION** |
| ALL ACTIONS | |
| | Date:          February 9, 2024 |
| | Time:          10:00 A.M. |
| | Courtroom:   1 |
| | Judge:         Hon. Susan Illston |

LEAD PLAINTIFF'S OBJECTIONS TO DEFENDANTS' SUR-REPLY EVIDENCE IN OPPOSITION TO CLASS CERTIFICATION (Case No. 3:22-cv-00105-SI)

Defendants' sur-reply again seeks to inject the fact-intensive merits issue of "tracing" at class certification by submitting:  (1) a purported expert report from Jack R. Wiener (ECF 149-3), and (2) declarations from two fact witnesses, Ann Marie Bria and Lia Ludwig (ECF 149-8, 149-9), in violation of Rule 37.  All of these materials should be excluded.

**Mr. Wiener's Opinions Should Be Excluded.**  For context, Plaintiff's expert Dr. Mitts describes a reliable methodology to trace Talis shares to the Registration Statement on a Class-wide basis using common proof.  To do so, Dr. Mitts will apply reliable accounting techniques such as FIFO and LIFO to trading data available through discovery from sources including DTC and FINRA, such as the Consolidated Audit Trail, which contains "every customer transaction in a centralized repository for every security with complete identifying information for every customer."  (ECF 138-1 (Mitts Decl.) ¶¶44–50 & Kubota Decl. Ex. B (Mitts Tr.) at 53:10–13; 71:11–73:6.)  Plaintiff has issued subpoenas to these entities to obtain the relevant data.

Dr. Mitts is a Ph.D. economist whose opinions on similar issues have been accepted in this District and others.  *See Sheet Metal Workers Nat'l Pension Fund v. Bayer Aktiengesellschaft*, No. 20-CV-04737-RS, 2023 WL 3569981, at *2 (N.D. Cal. May 19, 2023) (certifying Section 10(b) class and crediting Dr. Mitts' methodology to use "trading data to determine that irrevocable liability for purchasing Bayer ADRs occurred within the United States"); *Set Cap. LLC v. Credit Suisse Grp. AG*, No. 18 CIV. 2268 (AT), 2023 WL 2535175, at *5–6 (S.D.N.Y. Mar. 16, 2023) (certifying Securities Act class and denying *Daubert* motion because Dr. Mitts' opinions are "reliably supported"; "at the class certification stage, and before the completion of fact discovery, it is sufficient for Mitts to outline his methodology and how he will apply it").

Mr. Wiener—an in-house attorney at DTC nearly 20 years ago whose opinions have never been accepted by any court—made no effort to apply or test Dr. Mitts' tracing methodology.  He admittedly did not obtain or analyze *any* of the data that Dr. Mitts will use to trace Talis shares to the Registration Statement.  (*See* Kubota Decl. Ex. A (Wiener Tr.) at 28:10–29:25; 110:3–6.)  Without obtaining the data or performing any quantitative analysis, Mr. Wiener opines that he is "not aware of any method to trace" Talis shares after August 13, 2021, when DTC technically held legal title to both

IPO and non-IPO shares.[1]  But Dr. Mitts expressly describes a methodology to trace in those circumstances (ECF 138-1 ¶¶44–47), and Plaintiff has issued subpoenas to obtain the necessary facts.

Mr. Wiener's opinions should be excluded for two reasons.  First, Mr. Wiener is unqualified to opine on the highly technical "tracing" issue, since he lacks any relevant knowledge, skill, experience, training, or education.  Second, Mr. Wiener's opinions are unreliable.  With no facts, data, or methodology, he simply makes conclusory, subjective claims that tracing is "impossible" and that he is not personally "aware of any method to trace" after August 13, 2021.  But lack of awareness is not a methodology, much less a reliable one.  At deposition, Mr. Wiener was unable to identify any reliable basis for his personal views, claiming that he simply "know[s] how things work," read the Uniform Commercial Code and SEC releases, and drew upon "discussion at lunch" at DTC "many years ago."  (Ex. A at 83:8–23; 80:16–81:12.)  And Mr. Wiener has not applied any "principles and methods to the facts of the case," Fed. R. Evid. 702(d):  he admittedly did not review any of the trading records to which Dr. Mitts will apply his methodology, instead declaring that "There is no way it can work.  . . . There is no need to repeat what he did."  (Ex. A at 104:5–18.)

**Defendants' New Declarations Are Precluded under Rule 37.**  The Bria Declaration (from a DTC employee) and the Supplemental Ludwig Declaration (from a Broadridge employee) are precluded under Rule 37 for the same reason as Defendants' initial evidentiary submission. Defendants never identified Ms. Bria, Ms. Ludwig, DTC, or Broadridge in their initial disclosures.

## I.      THE WIENER REPORT SHOULD BE EXCLUDED IN ITS ENTIRETY

### A.      Mr. Wiener Is Unqualified

As a threshold matter, Mr. Wiener is simply not qualified.  He lacks the necessary "knowledge, skill, experience, training, or education," Fed. R. Evid. 702, to opine on the highly technical and fact-intensive issue of tracing shares of Talis common stock to the Registration Statement.  *See Maldonado v. Apple, Inc.*, No. 3:16-CV-04067-WHO, 2021 WL 1947512, at *17 (N.D. Cal. May 14, 2021) (defendant's expert on chemical and nuclear engineering was "not qualified under standard *Daubert*

---

[1] Mr. Wiener and Defendants do not dispute that tracing is satisfied for the period from Talis's February 11, 2021 IPO through August 13, 2021.

2

LEAD PLAINTIFF'S OBJECTIONS TO DEFENDANTS' SUR-REPLY EVIDENCE IN OPPOSITION TO CLASS CERTIFICATION (Case No. 3:22-cv-00105-SI)

principles" to opine on "reliability science or electrical engineering").

Mr. Wiener's opinions have never been accepted by any federal court. (*See* Ex. A at 43:25–48:9.)[2]  And unlike Dr. Mitts, Mr. Wiener has no relevant "education, specialized knowledge, [or] extensive practical experience applying quantitative methodologies."  *Set Cap. LLC*, 2023 WL 2535175, at *5–6.  Mr. Wiener has no advanced degrees (other than a J.D.) (Ex. A at 21:15–22), he is not an economist (*id.* at 25:3–5), and he has never published any academic work (*id.* at 22:22–23:3 ("No academic publications.")).  By contrast, Dr. Mitts is a Ph.D. economist who has published extensively, including in peer-reviewed journals (ECF 138-1 ¶2), and has extensive experience supporting the U.S. Department of Justice (*id.* ¶5).  Mr. Wiener has no relevant experience with data analytics or computer coding (Ex. A at 107:7–108:6), which Dr. Mitts brings to bear.  And Mr. Wiener's primary credential—that he worked at DTC nearly 20 years ago (*see* Ex. A at 26:2–4)—is insufficient, both because his experience is stale and because he did not reliably apply it to the facts of this case, as discussed below.[3]  *See U.S. Equal Emp. Opportunity Comm'n v. MJC, Inc.*, No. CV 17-00371 SOM-WRP, 2019 WL 2992013, at *4 (D. Haw. July 9, 2019) (rejecting defense expert who relied principally on experience "as an EEOC attorney over 20 years ago").

**B.    Mr. Wiener's Unreliable Opinions Fail to Meet Rule 702's Requirements**

Mr. Wiener's opinions should also be excluded under Rule 702(b), (c), and (d) because they are not based on "sufficient facts or data"; are not the "product of reliable principles and methods"; and do not "reflect[] a reliable application of the principles and methods to the facts of the case."

Mr. Wiener merely asserts in conclusory fashion that he is "not aware of any method" to trace absent circumstances such as physical certificates or a separate CUSIP (Opinion 2); that Dr. Mitts' methodology is "incorrect" (Opinion 3); and that Mr. Wiener "does not believe any method exists" to trace Talis shares "acquired since August 13, 2021" (Opinion 4).[4]  These opinions are unreliable *ipse*

---

[2] Mr. Wiener identified one federal case "15 to 20 years ago" where he thought the court may have accepted his opinions on a topic unrelated to Section 11 tracing.  However, the case settled before decision.  *See U.S. v. Estate of Bronner*, No. 1:06-cv-01731 (S.D.N.Y.), ECF 118 & 128.

[3] Mr. Wiener admittedly has no access to DTC's internal systems.  (Ex. A at 26:5–13.)

[4] Mr. Wiener's Opinion 1 is also improper because it largely parrots information from Defendants' fact witnesses.  "An expert may not vouch for one side's fact scenario . . . ."  *S.E.C. v. Daifotis*, No. C

3

*dixit*. *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) (expert opinions cannot be "connected to existing data only by the *ipse dixit* of the expert"). Specifically:

**No Facts, Data, or Methodology (702(b)-(c)):** Mr. Wiener acknowledged that tracing is "***highly fact-specific***" and calls for "a very careful methodological review of the ***facts of the case***." (Ex. A at 70:13–14; 75:22–24.) Here, he had no facts: he did not obtain or analyze any of the actual transaction data available from DTC, FINRA, brokers, and other sources that Dr. Mitts will use to trace. (*Id.* at 28:10–29:25.)[5]

Instead, Mr. Wiener simply declared that he had no need to do so: "Oh, I know [Dr. Mitts'] methodology doesn't work. ***There is no way it can work. It doesn't matter how many tens of millions of data points he inputs*** . . . . ***So there is no need to repeat what he did***." (Ex. A at 103:23–104:19.) Mr. Wiener explained that his views on "tracing" are based merely on "knowing how things work" and reading "what the SEC has said," "Article 8 [of] the Uniform Commercial Code," and "DTC's operational arrangements and bylaws and rules."[6] (*Id.* at 82:7–83:23.) Mr. Wiener also sought to bolster his opinions retroactively by claiming that when he worked at DTC "many years ago," he discussed the "general method of holding such securities by DTC" with unnamed attorneys. (*Id.* at 79:21–80:24 ("I don't remember their names.").) He claimed that this was "the sort of fodder that would be common discussion at lunch" at DTC (*id.* at 81:5–12) and vaguely referenced oral conversations he purportedly had with three DTC employees (*id.* at 101:18–103:14).[7]

Mr. Wiener's personal views based on lunchroom conversations and "knowing how things work" are far from the "sufficient facts or data" and "reliable principles or methods" required under Rule 702(b)-(c).[8] Instead, Mr. Wiener merely offers improper and "unsubstantiated extrapolations

---

11-00137 WHA, 2012 WL 2051193, at *4 (N.D. Cal. June 7, 2012).

[5] Illustrating his unjustified claims, Mr. Wiener opined that it is "not true" that "detailed transaction data are readily available" (ECF 149-3 ¶88), but this was based merely on counsel "in another matter" telling him that they had difficulty obtaining certain DTC records. (Ex. A at 132:4–23.)

[6] These documents do not address "tracing," and Mr. Wiener admitted that he was not aware of any statement by the SEC directly supporting his opinion. (Ex. A at 86:8–16 ("I don't know . . .").)

[7] Mr. Wiener offered inconsistent testimony on whether he actually discussed tracing with the DTC employees, initially claiming "I don't recall." (*Compare* Ex. A at 17:3–18:25 *with* 101:18–102:22.)

[8] Even an experience-based opinion "must explain how that experience leads to the conclusions

LEAD PLAINTIFF'S OBJECTIONS TO DEFENDANTS' SUR-REPLY EVIDENCE IN OPPOSITION TO CLASS CERTIFICATION (Case No. 3:22-cv-00105-SI)

from . . . personal experience." *W. Air Charter, Inc. v. Schembari*, No. LACV17420JGBKSX, 2019 WL 6998769, at *2–3 (C.D. Cal. Jan. 11, 2019). Mr. Wiener effectively conceded that his views on tracing are not an opinion at all:  he testified that "***It's less an opinion than knowledge of what the rules are and how things work*** . . . ." (Ex. A at 83:24–84:2.)  Mr. Wiener offers no reliable basis to conclude that tracing is "impossible" at all, much less before Dr. Mitts has applied his tracing methodology to the full factual record after discovery.

**No Reliable Application of Principles or Methods to the Facts (702(d)):**  Given that he has no data or facts and has not developed any methodology, it is unsurprising that Mr. Wiener made no effort to apply or test Dr. Mitts' tracing methodology; indeed, he thought that doing so would be "***a waste of time***." (Ex. A at 104:20–105:3.)  While Mr. Wiener claimed that he "did the work of determining over the last decades when tracing would be possible," he admitted that he did not "publish anything" or generate any documents showing what he did. (*Id.* at 97:16–99:12.) He further asserted:  "The fact that it's not possible, to my knowledge, [to trace] doesn't mean I didn't do any work." (*Id.* at 97:25–98:3.)  Given the lack of any reliable application of a methodology, Mr. Wiener's opinions are "precisely the type of *ipse dixit* that is not permissible under *Daubert*." *Perez v. State Farm Mut. Auto. Ins. Co.*, No. C 06-01962 JW, 2012 WL 3116355, at *5 (N.D. Cal. July 31, 2012).

## II.    THE BRIA AND LUDWIG DECLARATIONS SHOULD BE EXCLUDED

The Bria Declaration and Supplemental Ludwig Declarations are precluded under Rule 37 for the same reasons as Defendants' prior declarations from undisclosed fact witnesses.  Neither Ms. Bria nor Ms. Ludwig was identified in Defendants' initial disclosures, as Rule 26(a) requires, resulting in preclusion under Rule 37. (ECF 137 at 19-20 of 23.)  While Dr. Mitts criticized Ms. Ludwig's prior statements and Defendants' failure to provide any evidence from DTC, Defendants cannot attempt to cure the defect on sur-reply by engaging in a further violation of Rule 37.

## III.    CONCLUSION

Lead Plaintiff respectfully requests that the Court exclude Defendants' sur-reply evidence.

---

reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." Fed. R. Evid. 702 Advisory Committee Note (2000).  Mr. Wiener fails to do so.

5

LEAD PLAINTIFF'S OBJECTIONS TO DEFENDANTS' SUR-REPLY EVIDENCE IN OPPOSITION TO CLASS CERTIFICATION (Case No. 3:22-cv-00105-SI)

Dated:  February 6, 2024

By: */s/ Joseph A. Fonti*
**BLEICHMAR FONTI & AULD LLP**
Joseph A. Fonti (*pro hac vice*)
jfonti@bfalaw.com
Evan A. Kubota (*pro hac vice*)
ekubota@bfalaw.com
7 Times Square, 27th Floor
New York, New York 10036
Tel: (212) 789-1340
Fax: (212) 205-3960

– and –

Lesley E. Weaver (Bar No. 191305)
lweaver@bfalaw.com
1330 Broadway, Suite 630
Oakland, California 94612
Tel.: (415) 445-4003
Fax: (415) 445-4020

*Counsel for Lead Plaintiff Martin Dugan*
*and Lead Counsel for the Putative Class*

**THE SCHALL LAW FIRM**
Brian Schall (Bar No. 290685)
2049 Century Park East, Suite 2460
Los Angeles, California 90067
Telephone: (424) 303-1964
brian@schallfirm.com

*Additional Counsel for Lead Plaintiff Martin Dugan*

Respectfully submitted,

By: */s/ Jonathan D. Park*
**POMERANTZ LLP**
Jennifer Pafiti (Bar No. 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
Facsimile: (212) 661-8665
jpafiti@pomlaw.com

Jeremy A. Lieberman (*pro hac vice* application forthcoming)
Jonathan D. Park (*pro hac vice*)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
jalieberman@pomlaw.com
jpark@pomlaw.com

*Additional Counsel for the Putative Class*

## CERTIFICATION

I, Joseph A. Fonti, am the ECF user whose identification and password are being used to file this **LEAD PLAINTIFF'S OBJECTIONS TO DEFENDANTS' SUR-REPLY EVIDENCE IN OPPOSITION TO CLASS CERTIFICATION**.  In compliance with Civil Local Rule 5-1(i), I hereby attest that all other signatories listed and on whose behalf this filing is submitted have authorized this filing and concur in its content.

*/s/ Joseph A. Fonti*
Joseph A. Fonti

6

LEAD PLAINTIFF'S OBJECTIONS TO DEFENDANTS' SUR-REPLY EVIDENCE IN OPPOSITION TO CLASS CERTIFICATION (Case No. 3:22-cv-00105-SI)