**BLEICHMAR FONTI & AULD LLP**
Lesley E. Weaver (Bar No. 191305)
1330 Broadway, Suite 630
Oakland, California 94612
Telephone: (415) 445-4003
Facsimile: (415) 445-4020

*Counsel for Lead Plaintiff Martin Dugan
and Lead Counsel for the Class*

*[Additional counsel on signature page]*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE TALIS BIOMEDICAL SECURITIES LITIGATION | Case No. 22-cv-00105-SI |
| | CLASS ACTION |
| THIS DOCUMENT RELATES TO: | **LEAD COUNSEL'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, LITIGATION EXPENSES, AND LEAD PLAINTIFF'S REASONABLE COSTS AND EXPENSES AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| ALL ACTIONS | |

Judge:      Hon. Susan Illston
Date:        March 14, 2025
Time:        10:00 a.m.
Courtroom:  1 – 17th Floor

**TABLE OF CONTENTS**

NOTICE OF MOTION AND MOTION ...........................................................................................1

STATEMENT OF THE ISSUES TO BE DECIDED...........................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES .......................................................................2

I.      PRELIMINARY STATEMENT ......................................................................................2

II.     THE COURT SHOULD APPROVE LEAD COUNSEL'S REQUESTED FEES .............4

        A.      The Percentage-of-Recovery Method Is Appropriate for Awarding Attorney's
                Fees In Common Fund Cases ...............................................................................4

        B.      Lead Plaintiff Supports the Fee Request................................................................5

        C.      Lead Counsel's Fee Request Is Reasonable and Warranted...................................5

                1.      The Extraordinary Result Achieved...........................................................6

                2.      The Risk of Litigation................................................................................7

                3.      The Skill Required and the Quality of Work..............................................8

                4.      The Contingent Nature of the Fee..............................................................9

                5.      Awards In Similar Cases...........................................................................10

        D.      The Reaction of the Class to Date Supports the Requested Attorneys' Fees ........11

        E.      The Requested Fee Is Reasonable Under a Lodestar Cross-Check ......................12

III.    PLAINTIFF'S COUNSEL'S EXPENSES ARE REASONABLE AND WERE
        NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED ..................14

IV.     LEAD PLAINTIFF SHOULD BE REIMBURSED HIS REASONABLE COSTS
        AND EXPENSES UNDER 15 U.S.C. § 77z-1(a)(4) .......................................................16

V.      CONCLUSION..............................................................................................................18

**TABLE OF AUTHORITIES**

**Page(s)**

CASES

*In re: 24 Hour Fitness Worldwide, Inc.*,
No. 20-11558-KBO, ECF No. 1603 (Bankr. D. Del. Jan. 14, 2021)..........................................13

*In re Amgen Inc. Sec. Litig.*,
No. CV 7-2536 PSG, 2016 WL 10571773 (C.D. Cal. Oct. 25, 2016).......................................12

*In re Apple Computer Sec. Litig.*,
No. C-84-20148(A)-JW, 1991 WL 238298 (N.D. Cal. Sept. 6, 1991)......................................10

*In re Apple Inc. Device Performance Litig.*,
No. 5:18-md-02827-EJD, 2021 WL 1022866 (N.D. Cal. Mar. 17, 2021)...................................4

*Blum v. Stenson*,
465 U.S. 886 (1984)..................................................................................................................4

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980)..................................................................................................................4

*Boston Ret. Sys. v. Uber Techs., Inc.*,
No. 3:19-cv-06361-RS, ECF No. 481 (N.D. Cal. Dec. 4, 2024) .................................................11

*In re Cavanaugh*,
306 F.3d 726 (9th Cir. 2002) ......................................................................................................5

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001) .......................................................................................................5

*In re Charles Schwab Corp. Sec. Litig.*,
No. C 08-01510 WHA, 2011 WL 1481424 (N.D. Cal. Apr. 19, 2011)....................................14

*In re CV Therapeutics, Inc., Sec. Litig.*,
No. 3:03-cv-03709-SI, ECF No. 455 (N.D. Cal. Apr. 4, 2007).................................................11

*Davis v. Yelp, Inc.*,
No. 3:18-cv-00400-EMC, ECF No. 210 (N.D. Cal. Jan. 27, 2023) ...........................................11

*Destefano v. Zynga, Inc.*,
No. 12-cv-04007-JSC, 2016 WL 537946 (N.D. Cal. Feb. 11, 2016) ............................6, 8, 9, 11

*Dickey v. Advanced Micro Devices, Inc.*,
No. 15-cv-04922, 2020 WL 870928 (N.D. Cal. Feb. 21, 2020).................................................14

*In re Extreme Networks, Inc. Sec. Litig.*,
No. 15-cv-04883-BLF, 2019 WL 3290770 (N.D. Cal. July 22, 2019)......................................6

*In re FibroGen Sec. Litig.*,
  No. 3:21-cv-02623-EMC, ECF No. 244 (N.D. Cal. Feb. 13, 2024) ............................................. 7

*Fleming v. Impax Lab'ys Inc.*,
  No. 4:16-cv-06557-HSG, ECF No. 133 (N.D. Cal. July 15, 2022) ............................................. 11

*Glass v. UBS Fin. Servs, Inc.*,
  331 F. App'x 452 (9th Cir. 2009) ............................................................................................... 4

*Hefler v. Wells Fargo & Co.*,
  No. 16-cv-05479-JST, 2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) ...................................... 14

*In re Heritage Bond Litig.*,
  No. 02-ML-1475 DT, 2005 WL 1594403 (C.D. Cal. June 10, 2005) ..................................... 9, 11

*In re Immune Response Sec. Litig.*,
  497 F. Supp. 2d 1166 (S.D. Cal. 2007) ............................................................................... 11, 17

*Knight v. Red Door Salons, Inc.*,
  No. 08-01520 SC, 2009 WL 248367 (N.D. Cal. Feb. 2, 2009) .................................................. 12

*In re Lyft, Inc. Sec. Litig.*,
  No. 4:19-cv-02690-HSG, 2023 WL 5068504 (N.D. Cal. Aug. 7, 2023) ...................................... 7

*Moradpour v. Velodyne Lidar, Inc.*,
  No. 3:21-cv-01486-SI, ECF No. 236 (N.D. Cal. August 19, 2024) ........................................... 11

*Morris v. Lifescan, Inc.*,
  54 F. App'x 663 (9th Cir. 2003) ................................................................................................ 11

*In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid Cap Antitrust Litig.*,
  768 F. App'x 651 (9th Cir. 2019) ................................................................................................ 4

*In re Network Assocs., Inc., Sec. Litig.*,
  76 F. Supp. 2d 1017 (N.D. Cal. 1999) ........................................................................................ 5

*In re Omnivision Techs., Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2008) ............................................................................... *passim*

*In re Online DVD-Rental Antitrust Litig.*,
  779 F.3d 934 (9th Cir. 2015) ................................................................................................. 4, 12

*In re Optical Disk Drive Prods. Antitrust Litig.*,
  No. 3:10-md-2143 RS, 2016 WL 7364803 (N.D. Cal. Dec. 19, 2016) ...................................... 14

*In re Oracle Corp. Sec. Litig.*,
  No. C 01-00988 SI, 2009 WL 1709050 (N.D. Cal. June 19, 2009),
  *aff'd*, 627 F.3d 376 (9th Cir. 2010) .......................................................................................... 10

*Roberts v. Zuora, Inc.*,
  No. 3:19-cv-03422-SI, ECF No. 279 (N.D. Cal. Jan. 16, 2024) ......................................... 11, 14

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003) ...........................................................................................5

*Van Vranken v. Atl. Richfield Co.*,
  901 F. Supp. 294 (N.D. Cal. 1995) .................................................................................14

*Vincent v. Hughes Air West, Inc.*,
  557 F.2d 759 (9th Cir. 1977) ...........................................................................................4

*Vizcaino v. Microsoft Corp.*,
  290 F.3d 1043 (9th Cir. 2002) .................................................................................*passim*

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
  19 F.3d 1291 (9th Cir. 1994) ...............................................................................4, 5, 7, 9

*In re Wells Fargo & Co. S'holder Derivative Litig.*,
  445 F. Supp. 3d 508 (N.D. Cal. Apr. 7, 2020)................................................................6

**STATUTES**

15 U.S.C. § 77k(b)(3) .......................................................................................................8

15 U.S.C. § 77z-1(a)(4)............................................................................................*passim*

**OTHER AUTHORITIES**

*Cornerstone Research, Securities Class Action Settlements – 2023 Review and
  Analysis*, *available at* https://www.cornerstone.com/wp-content/uploads/2024/03/
  Securities-Class-Action-Settlements-2023-Review-and-Analysis.pdf....................................3, 6

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE THAT on March 14, 2025, at 10:00 a.m. PST, or as soon thereafter as this matter may be heard, Lead Counsel Bleichmar Fonti & Auld LLP will, and hereby does, respectfully move this Court for an entry of an Order, pursuant to Federal Rule of Civil Procedure 23(h): (1) awarding attorneys' fees; (2) awarding litigation expenses; and (3) granting Lead Plaintiff Martin Dugan's request for an award of his costs and expenses directly related to his representation of the Class.[1]

This Motion is based on the Memorandum of Points and Authorities below, the Declaration of Evan A. Kubota in Support of Class Representative's Motion for Final Approval of Class Action Settlement and Lead Counsel's Motion for Attorneys' Fees, Litigation Expenses, and Lead Plaintiff's Reasonable Costs and Expenses ("Kubota Declaration" or "Kubota Decl.") and the exhibits thereto, all other prior pleadings and papers in this Action, arguments of counsel, and such additional information or argument as may be requested by the Court.

## STATEMENT OF THE ISSUES TO BE DECIDED

The issues to be decided on this Motion are:

1.      Whether the Court should approve Lead Counsel's application for an award of attorneys' fees of 28% of the Settlement Fund, plus interest at the same rate and for the same period as earned by the Settlement Fund, until paid (the "Fee Application");

2.      Whether Lead Counsel should be reimbursed for the reasonable and necessary litigation expenses incurred in this action in the amount of $1,268,366.35, plus interest at the same rate and for the same period as earned by the Settlement Fund, until paid (the "Expense Application"); and

3.      Whether the Court should award Lead Plaintiff his costs and expenses directly related to his representation of the Class in the amount of $36,000, pursuant to 15 U.S.C. § 77z-1(a)(4).

---

[1] Unless otherwise noted, all emphasis is added and all internal citations and quotation marks are omitted.

LEAD COUNSEL'S NOTICE OF MOT. AND MOT. FOR ATTORNEYS' FEES,
LITIGATION EXPENSES, AND LEAD PLAINTIFF'S REASONABLE COSTS AND EXPENSES        CASE NO. 3:22-cv-00105-SI

1

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    PRELIMINARY STATEMENT

The Court has preliminarily approved the Settlement to resolve this securities class action in exchange for a cash payment of $32.5 million—an outstanding result given Talis's financial condition, the maximum theoretical damages, and the risks and delay of further litigation.

Plaintiff's Counsel achieved the Settlement after litigation since early 2022, class certification, and extensive discovery. Over the course of this action, Plaintiff's Counsel shouldered significant risks, including outright dismissal at the pleading stage and Defendants' extensive opposition to class certification. At all times, Defendants vigorously contested liability, including whether the Registration Statement contained any material misstatement or omission, threatening to defeat the Class's claims outright. And significantly, Talis—which never launched a commercial product—was rapidly depleting its remaining cash and insurance and warned that it may pursue bankruptcy in the near term. (*See* ECF No. 167 at 3–4.) This raised a substantial risk that the Class's claims against Talis would never reach summary judgment, let alone trial, and that Plaintiff's Counsel would obtain no compensation for its work. Despite these risks, Plaintiff's Counsel invested 8,234.86 hours (or $6,351,918.25) of work on a fully contingent basis to achieve the Settlement.

Bleichmar Fonti & Auld LLP ("BFA") now respectfully seeks (1) an award of attorneys' fees in the amount of 28% of the Settlement Fund (plus interest at the same rate and for the same period as earned by the Settlement Fund, until paid); (2) payment of litigation expenses in the amount of $1,268,366.35 (plus interest at the same rate and for the same period as earned by the Settlement Fund, until paid); and (3) an award of $36,000 to Lead Plaintiff pursuant to 15 U.S.C. § 77z-1(a)(4).

First, the requested 28% fee is reasonable and comparable to fee percentages awarded in this Circuit, and the factors courts regularly consider support an award above the 25% "benchmark." Perhaps the most important factor is the outstanding result achieved for the benefit of the Settlement Class. By developing compelling and detailed allegations and vigorously prosecuting this action— while navigating the risks of Talis's deteriorating financial condition—Plaintiff's Counsel achieved

a Settlement that represents between 20% and 72% of Plaintiff's estimated range of recoverable damages.  Even the low end of this range, at 20% of maximum statutory damages, is 4.4 times higher than the 4.5% median recovery in Securities Act cases of comparable size.[2]  (Kubota Decl. ¶ 93.)

As to comparable fee awards, fees of 28% or higher have regularly been awarded in securities class actions in this District and Circuit. (*Infra* Sec. II, C.5.)  Other relevant factors also support the requested fee, including the advanced stage of the litigation; the quality of representation; the substantial time and labor expended by counsel; the high stakes of this action; and the support of Lead Plaintiff and the Class.  (*Infra* Sec. II, C.)

Second, the requested reimbursement of $1,268,366.35 in litigation expenses is reasonable because these expenses were necessarily incurred to prosecute this complex and technical case, which required Plaintiff's Counsel to, among other things:  (i) investigate, draft, and file two complaints; (ii) overcome Defendants' second motion to dismiss; (iii) secure and analyze approximately 865,000 pages of documents; (iv) take 14 fact depositions; (v) obtain class certification after three expert depositions and a full-day deposition of Lead Plaintiff; (vi) serve three opening expert reports; and (vii) engage in lengthy arm's-length mediation under the auspices of Michelle Yoshida of Phillips ADR, while addressing Talis's financial condition and the threat of near-term bankruptcy.  Underscoring the action's complexity and risk, expert and bankruptcy counsel fees comprise the majority of litigation expenses.

Finally, Lead Plaintiff requests an award of $36,000 pursuant to the PSLRA's provision for "award[s] of reasonable costs and expenses (including lost wages) directly relating to the representation of the class," 15 U.S.C. § 77z-1(a)(4).  The requested award is reasonable given Lead Plaintiff's approximately 60 hours of time devoted to prosecuting this action on behalf of the Settlement Class, and supported by prior awards to lead plaintiffs in this District and Circuit.

---

[2] *See Cornerstone Research, Securities Class Action Settlements – 2023 Review and Analysis*, at 8, *available at* https://www.cornerstone.com/wp-content/uploads/2024/03/Securities-Class-Action-Settlements-2023-Review-and-Analysis.pdf.

## II.  THE COURT SHOULD APPROVE LEAD COUNSEL'S REQUESTED FEES

### A.  The Percentage-of-Recovery Method Is Appropriate for Awarding Attorney's Fees in Common Fund Cases

The Supreme Court has recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).  "The common fund doctrine provides that a private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim is entitled to recover from the fund the costs of his litigation, including attorneys' fees." *Vincent v. Hughes Air West, Inc.*, 557 F.2d 759, 769 (9th Cir. 1977).  The "equitable notion that those who benefit from the creation of the fund should share the wealth with the lawyers whose skill and effort helped create it" is the guiding principle of the common fund doctrine.  *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994) ("*WPPSS*").

"[U]nder the common fund doctrine … a reasonable fee is based on a percentage of the fund bestowed on the class." *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984).  The Ninth Circuit has repeatedly approved the use of the percentage method in common-fund cases.  *See, e.g.*, *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002) ("the primary basis of the fee award remains the percentage method"); *In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid Cap Antitrust Litig.*, 768 F. App'x 651, 653 (9th Cir. 2019) (approving district court's use of the "percentage-of-the-fund method"); *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 953 (9th Cir. 2015) (same); *Glass v. UBS Fin. Servs, Inc.*, 331 F. App'x 452, 457 (9th Cir. 2009) (same).

When choosing the percentage approach, courts in the Ninth Circuit recognize that it confers significant benefits and aligns attorneys' incentives with the interest of the class in achieving the maximum possible recovery in the shortest amount of time.  *See In re Apple Inc. Device Performance Litig.*, No. 5:18-md-02827-EJD, 2021 WL 1022866, at *2 (N.D. Cal. Mar. 17, 2021) ("The percentage-of-the-fund method confers 'significant benefits … including consistency with contingency fee calculations in the private market, aligning the lawyers' interests with achieving

the highest award for the class members, and reducing the burden on the courts that a complex lodestar calculation requires'").

### B.    Lead Plaintiff Supports the Fee Request

Further supporting the requested fee, Lead Plaintiff Dugan's retention agreement with counsel memorialized the requested fee percentage. (Kubota Decl., Ex. A ¶ 9.) This *ex ante* fee agreement made well before any recovery was achieved, and Lead Plaintiff's extensive involvement in the Action, confirm the Fee Application's reasonableness. The PSLRA seeks to encourage investors with significant financial interests in the litigation—such as Dugan—to serve as lead plaintiffs and play an active role in supervising and directing the litigation, including selecting, retaining, and overseeing counsel. *See In re Network Assocs., Inc., Sec. Litig.*, 76 F. Supp. 2d 1017, 1020 (N.D. Cal. 1999). Thus, "under the PSLRA, courts should accord a presumption of reasonableness to any fee request submitted pursuant to a retainer agreement that was entered into between a properly-selected lead plaintiff and a properly-selected lead counsel." *In re Cendant Corp. Litig.*, 264 F.3d 201, 282 (3d Cir. 2001); *see also In re Cavanaugh*, 306 F.3d 726, 734 n.14 (9th Cir. 2002) (noting the "Reform Act's underlying assumption that, at least in the typical case, a properly-selected lead plaintiff is likely to do as good or better job than the court at [choosing counsel and a retainer agreement]").

### C.    Lead Counsel's Fee Request Is Reasonable and Warranted

The requested 28% fee award is reasonable and justified in this challenging, risky case. Although the Ninth Circuit has stated that "25% of the common fund" is a "benchmark award for attorney fees," *Staton v. Boeing Co.*, 327 F.3d 938, 968 (9th Cir. 2003), the Circuit has also recognized that "district court[s] should be guided by the fundamental principle that fee awards out of common funds be '*reasonable under the circumstances.*'" *WPPSS*, 19 F.3d at 1296 (emphasis in the original).

Thus, "in most common fund cases, the award exceeds that benchmark." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2008) (awarding 28% fee); *Vizcaino*, 290 F.3d at 1050 (affirming 28% fee). Indeed, courts in this District have regularly awarded fees of 28% or higher in securities class settlements. (*Infra* at Sec. II, C.5.)

Here, the relevant factors confirm that a 28% fee award is fair and reasonable in the circumstances of this case. Those factors "include '(1) the results achieved; (2) the risk of litigation; (3) the skill required and quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases.'" *In re Extreme Networks, Inc. Sec. Litig.*, No. 15-cv-04883-BLF, 2019 WL 3290770, at *10 (N.D. Cal. July 22, 2019); *see also Vizcaino*, 290 F.3d at 1048–50.

As detailed below, each factor supports the Fee Application: Plaintiff's Counsel achieved an exceptional result, with a Settlement that exhausts all of Defendants' remaining insurance and over half of Talis's remaining cash; achieving that result demanded skilled effort since early 2022 on a wholly contingent basis; and comparable or higher fee percentages have regularly been awarded in similar cases.

### 1.    The Extraordinary Result Achieved

Courts typically consider the results achieved to be the most important factor when assessing a request for attorneys' fees. *See, e.g., In re Wells Fargo & Co. S'holder Derivative Litig.*, 445 F. Supp. 3d 508, 522 (N.D. Cal. Apr. 7, 2020) ("The first and 'most critical factor [in determining attorneys' fees] is the degree of success obtained.'"); *Destefano v. Zynga, Inc.*, No. 12-cv-04007-JSC, 2016 WL 537946, at *17 (N.D. Cal. Feb. 11, 2016) ("The overall result and benefit to the class from the litigation is the most important factor in granting a fee award.").

Here, Plaintiff's Counsel achieved an outstanding result. The $32.5 million recovery represents between 20% and 72% of Plaintiff's estimated range of recoverable damages of $44.6 million to $162 million. Again, the 20% low end of this range is nearly three times the median 7.5% recovery in Securities Act cases between 2014 and 2023, and 4.4 times higher than the median in Securities Act cases of comparable size.[3]  (Kubota Decl. ¶ 93.)

---

[3] *See Cornerstone Research, Securities Class Action Settlements – 2023 Review and Analysis*, at 8, *available at* https://www.cornerstone.com/wp-content/uploads/2024/03/Securities-Class-Action-Settlements-2023-Review-and-Analysis.pdf.

Further, if Defendants' negative causation defense had prevailed, recoverable damages would be constrained to at most $44.6 million under Plaintiff's estimate, and the Settlement Amount would constitute a 72% recovery—nearly three-quarters of recoverable damages.[4]

The range of recovery here also compares favorably to securities class action settlements in this District. *See, e.g.*, *In re FibroGen Sec. Litig.*, No. 3:21-cv-02623-EMC, ECF No. 244 ¶ 5(b) (N.D. Cal. Feb. 13, 2024) (settlement recovered "approximately 3.4% to 6.4% of the maximum damages"); *In re Lyft, Inc. Sec. Litig.*, No. 4:19-cv-02690-HSG, 2023 WL 5068504, at *6 (N.D. Cal. Aug. 7, 2023) (3.2 to 4.7% of maximum damages).

This result—recovering up to 72% of estimated damages, and multiples higher than the national median recovery—is exceptional by any measure. It is especially noteworthy given Talis's material financial constraints and the risk of a near-term Chapter 11 filing, detailed below, which greatly diminished the prospect of any meaningfully larger recovery. Despite these constraints, the Settlement exhausts more than half of Talis's remaining cash and all of Defendants' remaining D&O insurance coverage. Out of the $32.5 million Settlement Amount, $27.5 million—or nearly 85%—consists of company cash. This exceptional result supports the requested fee.

**2.      The Risk of Litigation**

"The risk that further litigation might result in Plaintiffs not recovering at all, particularly [in] a case involving complicated legal issues, is a significant factor in the award of fees." *Omnivision*, 559 F. Supp. 2d at 1046–47; *see also Vizcaino*, 290 F.3d at 1048; *WPPSS*, 19 F.3d at 1299–1301.

Here, as discussed in the Kubota Declaration, Plaintiff's Counsel faced significant risks in prosecuting this complex Action on a fully contingent basis. (Kubota Decl. ¶¶ 73–85.) On the merits, Defendants vigorously denied that Talis's Registration Statement contained any material misstatement or omission, and initially succeeded in obtaining dismissal at the pleading stage.

---

[4] $44.6 million is Plaintiff's estimate of damages after negative causation. Defendants' position is that their negative causation defense would have foreclosed any recoverable damages if litigation had continued.

While Lead Plaintiff defeated Defendants' second motion to dismiss, substantial risks remained. For example, Defendants continued to deny falsity, and likely would have argued that any alleged misstatement or omission was immaterial in the context of lengthy risk disclosures and other language in the Registration Statement. Defendants also likely would have challenged materiality by arguing, for example, that any alleged misstatements or omissions were immaterial in light of unrelated factors that delayed or prevented a commercial launch. Further, Defendants likely would have sought to portray Talis and its officers and directors as working in good faith to launch a complex new medical device during the COVID-19 pandemic—an urgent public health imperative. The Individual Defendants also had a statutory "due diligence" defense to liability under Section 11. *See* 15 U.S.C. § 77k(b)(3).

With respect to damages, under Lead Plaintiff expert's estimate, negative causation arguments would have reduced recoverable damages to at most $44.6 million, while under Defendants' view, their negative causation defense would have foreclosed any recoverable damages if litigation had continued. If Defendants' view prevailed and they successfully demonstrated that damages were zero, the Class would recover nothing.

Beyond the risks to liability and damages, Talis's deteriorating financial condition posed serious case-specific risks. With no commercial product, Talis had a rapidly depleting cash position throughout the Action, with its cash and cash equivalents dwindling from $113 million in March 2023 to $59.9 million in June 2024. (Kubota Decl. ¶ 82.) As Talis's cash continued to decline, shortly before the parties agreed to the Settlement, Talis warned that it expected to file a bankruptcy petition "in the near future." (*Id.* ¶ 83.) The prospect of a near-term Chapter 11 filing significantly raised the risk that this action would never reach summary judgment (much less trial), and that Lead Counsel would receive no compensation, regardless of the strength of the merits.

### 3. The Skill Required and the Quality of Work

The "'prosecution and management of a complex national class action requires unique legal skills and abilities.'" *Zynga*, 2016 WL 537946, at *17 (quoting *Omnivision*, 559 F. Supp. 2d at 1047). "'This is particularly true in securities cases because the [PSLRA] makes it much more difficult for securities plaintiffs to get past a motion to dismiss.'" *Id*.

This action's complexity and technical nature demanded heightened skill. On the merits, developing the pleadings, defeating Defendants' second motion to dismiss, and successfully pursuing fact and expert discovery required Plaintiff's Counsel to master complex issues concerning the medical device manufacturing process; federal regulations and industry standards concerning medical devices and FDA approval; the FDA Emergency Use Authorization framework during the COVID-19 pandemic; and COVID-19 test sensitivity and failure rates. Talis's financial condition and related bankruptcy issues demanded further skill and experience to navigate.

Plaintiff's Counsel's reputation and experience further support the requested fee. BFA partners have litigated dozens of securities actions that have contributed to the recovery of billions of dollars for investors, including nearly $2 billion since the founding of the firm in 2014, and BFA serves as lead counsel in a number of significant pending securities class actions. (Kubota Decl. ¶¶ 102–03.) Co-Class Counsel Pomerantz LLP ("Pomerantz") and additional counsel The Schall Law Firm ("Schall") are also highly experienced in prosecuting complex securities class actions and brought their skill and experience to bear in this case. (*See* Kubota Decl., Exs. H & I.)

Additionally, "the quality of opposing counsel is important in evaluating the quality of Plaintiff's counsel's work." *In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 WL 1594403, at *20 (C.D. Cal. June 10, 2005); *see also Zynga*, 2016 WL 537946, at *17 ("The quality of opposing counsel is also relevant to the quality and skill that class counsel provided."). Here, Plaintiff's Counsel faced highly skilled and experienced opposition from one of the nation's largest and most sophisticated defense firms, Cooley LLP. Defendants' counsel litigated the Action skillfully and aggressively, with defense costs funded by insurance coverage. In the face of this formidable and well-financed opposition, Plaintiff's Counsel strongly developed the proof to persuade Talis and Defendants' insurance carriers to settle for a significant sum.

### 4. The Contingent Nature of the Fee

The contingent nature of the fee, the financial burden on counsel throughout the litigation, and the risk they will receive little or no compensation for their efforts is an important consideration when determining an award of attorneys' fees. *See WPPSS*, 19 F.3d at 1299 ("It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying

them a premium over their normal hourly rates for winning contingency cases."); *see also Omnivision*, 559 F. Supp. 2d at 1047 ("The importance of assuring adequate representation for plaintiffs who could not otherwise afford competent attorneys justifies providing those attorneys who do accept matters on a contingent-fee basis a larger fee than if they were billing by the hour or on a flat fee.").

The risks to recovery are significant in a complex securities class action such as this one. Indeed, there are many examples of cases where plaintiffs' counsel expended thousands of hours and millions of dollars to prosecute claims, yet ultimately lost the cases and received no compensation at all. *See, e.g.*, *In re Oracle Corp. Sec. Litig.*, No. C 01-00988 SI, 2009 WL 1709050 (N.D. Cal. June 19, 2009), *aff'd*, 627 F.3d 376 (9th Cir. 2010) (granting summary judgment to defendants after eight years of litigation). Even plaintiffs who defeat motions for summary judgment and succeed at trial may have judgment in their favor overturned on a post-trial motion or on appeal. *See, e.g.*, *In re Apple Computer Sec. Litig.*, No. C-84-20148(A)-JW, 1991 WL 238298 (N.D. Cal. Sept. 6, 1991) (after jury verdict for plaintiffs, court entered judgment for individual defendants and ordered new trial with respect to corporation).

Here, the fully contingent nature of the representation supports the requested fee. Plaintiff's Counsel committed significant time and expense (discussed further below) to vigorously prosecute this Action since early 2022. Plaintiff's Counsel undertook the representation of the Class knowing that the Action could last for years, would require the substantial investment of time by attorneys and support staff, and provided no guarantee of any compensation. Plaintiff's Counsel also assumed the risk of advancing all costs and expenses necessary to successfully prosecute the Action with no guarantee of reimbursement. And Talis's limited and rapidly decreasing cash position posed risks well beyond a normal contingency-fee representation, given that the prospect of Talis's near-term bankruptcy threatened to prevent (and, at minimum, materially delay) any resolution. Accordingly, the contingent nature of Plaintiff's Counsel's representation favors the requested fee.

### 5.     Awards in Similar Cases

A 28% fee is fair, reasonable, and adequate given the fee awards in similar actions of this size and complexity, including prior awards by this Court.

As noted above, "in most common fund cases, the award exceeds [the 25%] benchmark" in this Circuit. *Omnivision*, 559 F. Supp. 2d at 1047. Indeed, the Ninth Circuit has upheld awards of 28% and 33%. *See, e.g.*, *Morris v. Lifescan, Inc.*, 54 F. App'x 663, 664 (9th Cir. 2003) (affirming 33% fee award in $14.8 million settlement); *see also Vizcaino*, 290 F.3d at 1050 (affirming 28% fee in $96.885 million settlement).

This Court has also awarded fees of 28% or higher in similarly sized securities class settlements. For example, in *Moradpour v. Velodyne Lidar, Inc.*, this Court recently awarded a 28% fee in a $27.5 million settlement. No. 3:21-cv-01486-SI, ECF No. 236 at 1–2 (N.D. Cal. Aug. 19, 2024); *see also Roberts v. Zuora, Inc.*, No. 3:19-cv-03422-SI, ECF No. 279 at 1–2 (N.D. Cal. Jan. 16, 2024) (30% fee in $75.5 million settlement); *In re CV Therapeutics, Inc., Sec. Litig.*, No. 3:03-cv-03709-SI, ECF No. 455 at 1–2 (N.D. Cal. Apr. 4, 2007) (30% fee in $13.35 million settlement).

Similarly, other courts in this District have regularly awarded 28% or higher fees in securities class actions. *See, e.g.*, *Boston Ret. Sys. v. Uber Techs., Inc.*, No. 3:19-cv-06361-RS, ECF No. 481 at 3–4 (N.D. Cal. Dec. 4, 2024) (awarding 29% fee in $200 million settlement); *Davis v. Yelp, Inc.*, No. 3:18-cv-00400-EMC, ECF No. 210 at 3 (N.D. Cal. Jan. 27, 2023) (awarding 33.3% fee in $22.25 million settlement); *Fleming v. Impax Labs. Inc.*, No. 4:16-cv-06557-HSG, ECF No. 133 at 14–16 (N.D. Cal. July 15, 2022) (awarding 30% fee in $33 million settlement).

These precedents confirm that the requested 28% fee is reasonable in the circumstances of this case, particularly in light of the result, risk, quality, and other factors analyzed herein.

**D.    The Reaction of the Class to Date Supports the Requested Attorneys' Fees**

Courts also consider the reaction of the class when deciding whether to award the requested attorneys' fees. *See, e.g.*, *Zynga*, 2016 WL 537946, at *18 ("the lack of objection by any Class Members also supports" the fee award); *Heritage*, 2005 WL 1594404, at *21 ("[t]he existence or absence of objectors to the requested attorneys' fee is a factor [in] determining the appropriate fee award"); *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1177 (S.D. Cal. 2007) ("the lack of objection from any Class Member supports the attorneys' fees award").

The reaction of the Class to date supports the Fee Application. First, as already noted, Lead Plaintiff, who has committed to actively prosecuting the action in the best interest of the Class, has reviewed and supports the Fee Application. (Kubota Decl., Ex. A ¶¶ 8–11.) Further, as of January 16, 2025, the Claims Administrator has disseminated 19,384 copies of the Notice to potential Settlement Class Members advising them that Class Counsel would apply for attorneys' fees in an amount not to exceed 28% of the Settlement Fund. (Kubota Decl. Ex. E ("Teichmiller Decl.") ¶ 13 & Ex. A.) While the deadline for objections does not expire until February 21, 2025, to date, no objections to the requested fee set forth in the Notice have been received. This lack of objections further confirms that the requested fee is reasonable. *See, e.g.*, *Knight v. Red Door Salons, Inc.*, No. 08-01520 SC, 2009 WL 248367, at *7 (N.D. Cal. Feb. 2, 2009) (lack of objections supported 30% fee award); *Omnivision*, 559 F. Supp. 2d at 1048 (three objections supported 28% fee award).

### E.    The Requested Fee Is Reasonable Under a Lodestar Cross-Check

"As a final check on the reasonableness of the requested fees, courts often compare the fee counsel seeks as a percentage with what their hourly bills would amount to under the lodestar analysis." *Omnivision*, 559 F. Supp. 2d at 1048. Although such an analysis "is not required for an award of attorneys' fees in the Ninth Circuit, a cross-check of the fee request with a lodestar amount can demonstrate the fee request's reasonableness." *In re Amgen Inc. Sec. Litig.*, No. CV 7-2536 PSG, 2016 WL 10571773, at *9 (C.D. Cal. Oct. 25, 2016). "The lodestar method requires 'multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer.'" *In re Online DVD-Rental*, 779 F.3d at 949.

Here, Plaintiff's Counsel devoted 8,234.86 hours of attorney and staff time prosecuting this action on the Class's behalf through January 3, 2025 (excluding all time related to the Fee and Expense Applications).[5] (Kubota Decl. ¶ 106 & Exs. C, H & I.) The resulting lodestar is $6,351,918.25. *Id*. As explained in the Kubota Declaration and the declarations submitted on behalf of Pomerantz and Schall, the lodestar information is based on contemporaneous time records

---

[5] Plaintiff's Counsel will continue to devote additional time to the final approval process and, if final approval is granted, overseeing claims processing and settlement administration.

prepared and maintained in the ordinary course by each firm. (Kubota Decl. ¶ 113; Ex. H ¶ 7; Ex. I ¶ 7.)

Pursuant to the Northern District's Procedural Guidance, Plaintiff's Counsel have provided billing category-based summary charts or detailed descriptions of the work performed in connection with this Action.  (Kubota Decl. ¶ 112 & Ex. C; Ex. H ¶ 9 & Ex. 2; Ex. I, Ex. 2.)  The Kubota Declaration details Plaintiff's Counsel's extensive work since early 2022, which included, among other things, (i) investigating, drafting, and filing two complaints; (ii) briefing two motions to dismiss and preparing for oral argument; (iii) obtaining class certification after extensive briefing, responding to discovery requests to Lead Plaintiffs, the deposition of Lead Plaintiff Dugan, and three expert depositions; (iv) securing and analyzing over 865,000 pages of documents from Defendants and third parties; (v) serving extensive written discovery requests; (vi) preparing for and taking 14 fact depositions; (vii) serving three expert reports and preparing to serve rebuttal reports to Defendants' three experts; (viii) participating in a lengthy mediation process, with two full-day sessions, briefing, and numerous additional calls over a period of five months; and (ix) preparing and finalizing the Stipulation of Settlement and related documentation.  (Kubota Decl. ¶ 107.)  This work was intensely focused on developing a compelling set of allegations and proof to advance the litigation and secure a highly favorable resolution for the Settlement Class.

Plaintiff's Counsel's hourly rates used to calculate the lodestar, which range from $520 to $1,250 for attorneys (Kubota Decl., Ex. C; Ex. H ¶ 8; Ex. I ¶ 9), are also reasonable.  These rates are the usual and customary rates set by each firm for each individual timekeeper, and they are comparable to rates set by peer firms for attorneys of similar skill and experience.  (Kubota Decl. ¶ 116; Ex. H ¶ 11; Ex. I ¶ 10.)  They also compare favorably to the non-contingent rates charged by Defendants' counsel in this Action.  For example, Defendants' counsel (Cooley LLP) indicated in a 2021 bankruptcy court filing that the firm's rates reached up to $1,250 for partners and $995 for associates. *In re: 24 Hour Fitness Worldwide, Inc.*, No. 20-11558-KBO, ECF No. 1603 (Bankr. D. Del. Jan. 14, 2021).

Finally, the requested 28% fee would represent a multiplier of 1.43 times Plaintiff's Counsel's lodestar.  This multiplier is reasonable given the significant risks of this litigation,

detailed above, and well within the range of multipliers typically awarded in this Circuit. In *Vizcaino*, 290 F.3d at 1051 n.6, for example, the Circuit affirmed a 3.65 multiplier and noted that most common fund cases apply a multiplier between 1 and 4. *See also Zuora*, No. 3:19-cv-03422-SI, ECF No. 279 at 2 (awarding 4.3 multiplier); *Dickey v. Advanced Micro Devices, Inc.*, No. 15-cv-04922, 2020 WL 870928, at *8–9 (N.D. Cal. Feb. 21, 2020) ("The lodestar multiplier [of 3.08] also supports the reasonableness of the fee request and falls within the range of reasonableness."); *Hefler v. Wells Fargo & Co.*, No. 16-cv-05479-JST, 2018 WL 6619983, at *14 (N.D. Cal. Dec. 18, 2018) ("Because Plaintiffs' Counsel's lodestar multiplier [of 3.22] is within the range of reasonableness, it supports the requested award."); *In re Charles Schwab Corp. Sec. Litig.*, No. C 08-01510 WHA, 2011 WL 1481424, at *8 (N.D. Cal. Apr. 19, 2011) ("Given the circumstances of this case, a risk multiplier of 2.68 yields a fair and reasonable fee award for class counsel under a lodestar calculation."); *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 298 (N.D. Cal. 1995) ("[m]ultipliers in the 3–4 range are common in lodestar awards for lengthy and complex class action litigation").

## III.    PLAINTIFF'S COUNSEL'S EXPENSES ARE REASONABLE AND WERE NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED

Lead Counsel also respectfully requests reimbursement of $1,268,366.35, plus accrued interest, for Plaintiff's Counsel's expenses incurred in prosecuting this Action. (Kubota Decl. ¶ 92.) "Attorneys may recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters." *Omnivision*, 559 F. Supp. 2d at 1048; *see also In re Optical Disk Drive Prods. Antitrust Litig.*, No. 3:10-md-2143 RS, 2016 WL 7364803, at *10–11 (N.D. Cal. Dec. 19, 2016) ("Attorneys who create a common fund for the benefit of a class are entitled to be reimbursed for their out-of-pocket expenses incurred in creating the fund so long as the submitted expenses are reasonable, necessary and directly related to the prosecution of the action.").

Here, the expenses for which Lead Counsel seeks reimbursement were required to prosecute this Action and are of the type routinely charged to hourly clients. Plaintiff's Counsel's expenses are summarized and categorized in the Kubota Declaration and Exhibit F.

As explained therein, the Expense Application consists primarily of expenses incurred to engage experts and bankruptcy counsel.  Of the total requested expenses, $754,114.10, or approximately 59%, relates to experts.  Lead Plaintiff's testifying experts were Dr. Zach Nye (class certification, damages, and causation); Professor Joshua Mitts (Section 11 tracing); Dr. Morten Jensen (medical device design and manufacturing); and J. Lawrence Stevens (FDA issues).  (*See* Kubota Decl. ¶¶ 61, 124 & Ex. F.)  At the time of settlement, these experts had prepared five reports (with three more in process), and Dr. Nye and Professor Mitts were both deposed.  The experts' important contributions bolstered the strength of this case to drive a highly favorable result.

Plaintiff's Counsel also expended $214,828.48, or approximately 17% of total expenses, to retain bankruptcy counsel at Lowenstein Sandler LLP.  Bankruptcy counsel's involvement was required because Talis warned that "the Company anticipates commencing a voluntary petition under Chapter 11 (the "Chapter 11 Case") of the United States Code (the "Bankruptcy Code") in the near future to seek resolution of all claims against the Company and an orderly liquidation of its assets and dissolution of the Company." (Kubota Decl. ¶ 83.)  Given the real risk of a near-term bankruptcy filing—which had the potential to materially decrease or eliminate any potential recovery for the Class—bankruptcy counsel actively participated in two mediation meetings (one in person) and worked extensively on draft documents in connection with the Settlement. Bankruptcy counsel helped to drive a highly favorable result for the Settlement Class.

In addition to these two principal categories of expenses, Lead Counsel expended $282,084.76, or approximately 22%, on typical expenses such as court reporting, e-discovery hosting, and mediation fees.  This included (i) $87,788.85 paid to Veritext Legal Solutions to facilitate and transcribe the remote depositions taken in this case, including providing remote exhibit sharing technology as well as remote real-time transcription services; (ii) $65,747.38 paid to the electronic discovery vendor that hosted document productions to facilitate review and analysis; (iii) $58,848.67 to A.B. Data to disseminate notice in connection with class certification;[6]

---

[6] Plaintiff's Counsel estimates that further expenses for notice of settlement and claims administration will not exceed $225,000.  The final amount will be submitted for approval with a distribution motion.

(iv) $30,412.50 in mediation fees (Phillips ADR Enterprises); (v) $19,300 for fees concerning subpoenas focused on Section 11 "tracing"; (v) $8,115.04 in computer research fees; (vi) $7,350.70 in service and filing fees; and (vii) $4,521.62 in copying, postage, printing materials, and communication expenses.

Finally, $15,594.51, or approximately 1.2% of total expenses, related to necessary travel, comprised of hotels, transportation, and meals.  All travel was by BFA attorneys and conducted for in-person depositions and mediation meetings.  Further, Plaintiff's Counsel took significant care to minimize travel expenses; the submitted expenses involve travel by one or two attorneys (with three attorneys at the final mediation).  All flights were booked as economy (or premium economy for flights over four hours); Lead Counsel's standard expense caps applied to hotels and meals; and no alcohol is included.  (Kubota Decl. ¶ 126.)  Lead Counsel has included a schedule of expenses that details each travel-related expenditure and the purpose for which it was made.  (*Id.* ¶ 125 & Ex. F.)

Notably, Lead Counsel's request for $1,268,366.35 in expenses is substantially lower than the maximum of approximately $1,800,000 estimated in the Notice disseminated to the Class.  (*Id.* ¶ 121.)  To date, there have been no objections by Class Members to Lead Counsel's expense request. (Teichmiller Decl. ¶ 20.)  Moreover, Lead Plaintiff Dugan supports Lead Counsel's request for reimbursement of expenses as reasonable.  (Kubota Decl., Ex. A ¶¶ 8–11.)

## IV.    LEAD PLAINTIFF SHOULD BE REIMBURSED HIS REASONABLE COSTS AND EXPENSES UNDER 15 U.S.C. § 77z-1(a)(4)

Finally, Lead Plaintiff Martin Dugan requests an award of $36,000, pursuant to 15 U.S.C. § 77z-1(a)(4), for his "reasonable costs and expenses" directly related to his representation of the Class.  The requested award is reasonable considering Mr. Dugan's time and effort committed to this litigation over nearly three years and awards in similar cases.

Consistent with the Northern District Guidelines, Lead Plaintiff has submitted a declaration setting forth the approximately 60 hours of time and effort he devoted to the Action.  Among other things, Lead Plaintiff:  (i) reviewed drafts of pleadings, briefs, and discovery responses; (ii) regularly communicated with Plaintiff's Counsel about litigation status, strategy, and key evidence (totaling about 19 hours); (iii) participated extensively in document and written discovery,

including a forensic document collection, reviewing five sets of interrogatory responses, and answering requests for admission (approximately 17 hours); (iv) participated in a full-day deposition, with related preparation and travel (approximately 14 hours); and (v) communicated regularly throughout the lengthy mediation process, leading to Lead Plaintiff's ultimate approval of the Settlement (approximately 10 hours).  (*See* Kubota Decl., Ex. A ¶¶ 13–24.)

Based on Lead Plaintiff's dedication of approximately 60 hours to the Action, using a reasonable hourly rate of $600, based on consulting work where Mr. Dugan was effectively compensated at over $1,000 per hour (*id.* ¶ 25), Lead Plaintiff seeks an award of $36,000.

This request is comparable to prior awards granted in this Circuit.  *See, e.g.*, *Immune Response*, 497 F. Supp. 2d at 1173–74 (awarding an individual lead plaintiff $40,000 in $10 million settlement).  Several courts in this Circuit have awarded securities lead plaintiffs between $20,000 and $40,000; after adjusting for inflation, several of these awards are equivalent to higher amounts (up to $60,686) today.  This analysis is shown below:[7]

| Case | Date of Award | Settlement | Award | Hourly Rate | Hours Expended | Award (Inflation Adjusted) |
|---|---|---|---|---|---|---|
| *Moradpour v. Velodyne Lidar, Inc.*, No. 21-cv-01486 (N.D. Cal.) | 08/19/2024 | $27.5 million | $20,000 | $333.33 | 60 | N/A |
| *In re CV Therapeutics, Inc.*, No. 03-cv-3709-SI (N.D. Cal.) | 04/04/2007 | $13.5 million | $26,000 | $250 | 104 | $39,687 |
| *In re Magma Design Automation, Inc. Sec. Litig.*, No. 05-cv-02394-CRB (N.D. Cal.) | 03/27/2009 | $13.3 million | $32,600 | N/A | N/A | $48,353 |
| *In re Immune Response Sec. Litig.*, No. 01-cv-1237 (S.D. Cal.) | 05/31/2007 | $10 million | $40,000 | $200 | 200 | $60,686 |

Finally, the requested award is below the amount stated in the Notice, which advises Settlement Class Members that "Lead Plaintiff may request an award not to exceed $37,500

---

[7] Inflation adjusted figures were calculated using the Consumer Price Index provided by the U.S. Bureau of Labor Statistics.  *See* https://www.bls.gov/opub/hom/cpi/calculation.htm.

pursuant to 15 U.S.C. § 77z-1(a)(4) in connection with his representation of the Settlement Class." (ECF No. 182-2, Ex. A-2.)  As of January 17, 2025, there have been no objections (Teichmiller Decl. ¶ 20), confirming that Lead Plaintiff's request is reasonable and warrants approval.

## V.    CONCLUSION

For the reasons set forth above, Lead Counsel BFA respectfully moves the Court to (i) award Lead Counsel attorneys' fees of 28% of the Settlement Fund, plus interest at the same rate and for the same period as earned by the Settlement Fund, until paid; (ii) reimburse Lead Counsel for litigation expenses in the amount of $1,268,366.35, plus interest at the same rate and for the same period as earned by the Settlement Fund, until paid; and (iii) award Lead Plaintiff his costs and expenses directly related to his representation of the Class in the amount of $36,000, pursuant to 15 U.S.C. § 77z-1(a)(4).


Dated: January 17, 2025                        Respectfully submitted,


By: */s/ Joseph A. Fonti*
**BLEICHMAR FONTI & AULD LLP**
Joseph A. Fonti (*pro hac vice*)
jfonti@bfalaw.com
Evan A. Kubota (*pro hac vice*)
ekubota@bfalaw.com
300 Park Avenue, Suite 1301
New York, New York 10022
Tel: (212) 789-1340
Fax: (212) 205-3960

– and –

Lesley E. Weaver (Bar No. 191305)
lweaver@bfalaw.com
1330 Broadway, Suite 630
Oakland, California 94612
Tel.: (415) 445-4003
Fax: (415) 445-4020

*Counsel for Lead Plaintiff Martin Dugan
and Lead Counsel for the Class*

**THE SCHALL LAW FIRM**
Brian Schall (Bar No. 290685)
2049 Century Park East, Suite 2460

Los Angeles, California 90067
Telephone: (424) 303-1964
brian@schallfirm.com

*Additional Counsel for Lead Plaintiff*
*Martin Dugan*

**POMERANTZ LLP**
Jennifer Pafiti (Bar No. 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
Facsimile: (212) 661-8665
jpafiti@pomlaw.com

Jeremy A. Lieberman (*pro hac vice*
application forthcoming)

J. Alexander Hood II (*pro hac vice*)
James M. LoPiano (*pro hac vice*)
Jonathan D. Park (*pro hac vice*)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
jalieberman@pomlaw.com
ahood@pomlaw.com
jlopiano@pomlaw.com
jpark@pomlaw.com

*Additional Counsel for the Class*